Mr. Justice Thompson
 

 delivered the opinion of the Court.—
 

 The appellees, who were the complainants in the Court below,, filed their bill against the Mechanics Bank of Alexandria, setting out- their right to three thousand .dollars of the Capital stock of that bank, which was standing in the name of Adam Lynn; but which was avowedly purchased and held\by him, as trustee for John Wise, the grandfather of the complainants, ánd from whom they derived their right and title to the stock in question. That they were desirous of having their stock transferred to their guardian, which the trustee, Adam Lynn, was willing to do, and offered to transfer the same; -but that on application to the batik, permission was refused, on the allegation that Adam Lynn was a debtor to the bank, and that it held a lien for that debt, on all the stock of the bank, which stood in his name. Tfie bill alleges, that when the stock was purchased by Adam Lynn, for John Wise, and transferred to him upon the books of the bank, it was well known to the President and Directors, that the purchase was made by, and transferred to Lynn, in his character of trustee for John Wise, although the trust was not expressed in the transfer.
 

 The bill prays, that the bank may be compelled to open its transfer book, and permit Adam' Lynn to -transfer the three thousand dollars, in stock, to the said Louisa and Anna Maria Setori, or to their guardian, Nathaniel s. Wise.
 

 The bank,,by its answer, denies .that the Board of Directors knew, or. had any notice, that Adam Lynn held the stock aS trustee; but alleges., that all the stock standing upon the books of the bank, in the name of Adam Lynn, was considered by the Board of Directors as -his own stock; and avers, that,at the time the answer was put in, there was no stock standing in his name on the books, but . that the whole of it had been applied by the bank to the payment of-his debts to it; according to articles of agreement between him and the cashier of the bank.
 

 The bank also, sets up the right, under its charter, to hold the stpck, for the payment of Lynn?s debt;' but had, under the agreement made with the cashier, as before mentioned, become the purchaser of 'the stock, for a full and fair consideration; without any knowledge that the complainants had any interest in the same. •
 

 The Court below, upon thejnll, answer, and exhibits, and proofs, taken in.the cause, decreed that the bank should cause its transfer book to be opened, and to permit Adam- Lynn to
 
 *305
 
 transfer the stock to Nathaniel S. Wise, guardian of the coin* plainants, to be by him held in trust, for.their use. From this decree there is an appeal to this Court,' and the following points have been made, upon which a reversal of that decree is claimed.
 

 ■ 1. That the subject matter of the bill is hot properly cogni - .zable in a Court of Chancery;. but that the remedy is at law, and the party to be compensated in damages.
 

 2. That there is a want of proper parties.
 

 3. That upon the merits, the bank has a right to hold and apply the stock, in payment of Adam Lynn’s debt to it.
 

 With respect to the first objection, it has been said that a Court of Chancery will not decree a specific performance of contracts; 'except for the purchase of lands or things that relate to the realty, and aré of a permanent nature; and, that where the contracts are for chattels, and compensation can be made in damages, the parties must be left to their remedy at law. But notwithstanding this distinction between personal contracts for goods, and contracts for lands, is to be found laid down in the books, as a general rule; yet there arc many cases, to be found, where specific performance of contracts, relating to personalty, have been enforced in chancery; and Courts will only-weigh with greater nicety, contracts of this description, than such as relate to lands. '
 

 But the application of this distinction to the present case, is not perceived. If this had been a bill, filed'against.the bank, to compel a specific performance of any contract .entered into with it, for the salé of stock, it might then be urged, that'compensation for a breach of the con tract, might be madcin damages; and that the remedy was properly to be sought, in 2'Court of law. But the bill does not set up’ any contract between the complainants and the bank; nor does it seek a,specific performance of any express contract whatever, enteredlnto with the bank-It only asks, that the .bank may be compelled to open' itstnuis.-fer book, and permit Adam Lynn to transfer the stock. By the charter and by-laws of the bank, such transfer could only be made upon the books of .the bank; and it was by their consent alone, that this could be done.
 

 Although it might be the duty of the bank to permit such transfer, it would be difficult to sustain an action at law, for refusing
 
 %o
 
 open its books, and permit the transfer. Nor liave the appellants showm-such a claim to the stock, as to authorize the Court to turn the appellees round to their remedy at.law, against Lynn, admitting they might have it. At all events;, the remedy at law'is not clear and perfect; and it is not.' a case for compensation in damages, .but for specific performance; which can only be enforced-in a Court of Chancery. "
 

 
 *306
 
 2d. The second objection, that Adam Lynn ought to have been made a defendant, would seem to grow out of a misapprehension of the object of this bill, and the specific relief sought by it.
 

 It ought to be observed here, preliminarily, as matter of practice, that although an objection for want of proper parties may be taken at the hearing; yet the objection ought not to prevail upon the final hearing on appeal; except in very strong cases, and when the Court perceives that a necessary and indispensa-, ble party is wanting.
 

 The objection should be taken at an earlier stage in the proceedings, by which great delay and expense would be avoided.
 

 The general rule, as to parties, undoubtedly is, that when a bill is brought for relief, all persons materially interested in the stibject o,f the suit, ought to be made parties, either as plaintiffs or defendants; in order to prevent a multiplicity of suits, and that there may be a complete and final decree between all parties interested. But, this is a rule established for the convenient administration of justice, and is subject to many exceptions; and is, more or less, a matter of discretion in the Court; and ought to be restricted to parties, whose interest is involved in the issue, and to be affected by the decree". The relief granted, will always be so modified, as not to affect the- interest of Others. 2
 
 Mad. Chancery,
 
 180. 1
 
 Johns. Chancery Cases,
 
 350.
 

 W.here was the necessity, or even propriety, of making Lynn a party ? No relief is sought against him. The bill expressly, alleges that he was perfectly willing to make the transfer; but permission -was refused by the bank. There is no allegation in the bill, upon which a decree'could be made against Lynn; and it is a well settled rule, that no one need be made a party, against whom, if brought to a hearing, the plaintiff can have no decree. 2
 
 Mad. Ch.
 
 184.
 
 3 P. Will. 310
 
 — Note
 
 1.
 

 The contest, with respect to the right to the stock, is between the complainants and the bank; and it cannot be necessary to bring Lynn into the 'suit, in order to determine that question. He claims no right to the stock; and if .the bank has established its right to hold it, for the payment of Lynn’s debt, the complainants have no pretence for requiring the books .of the bank to be opened, and to permit the transfer to be made, as prayed in the bill. The.bank cannot compel the complainants to bring Lynn before the Court, as a defendant; for the purpose of litigating questions between themselves, with which the complainants have no concern; No. objection to the decree can, therefore, be made fo.r want of proper parties.
 

 The remaining inquiry is, whether the bank is entitled to hold this stock, as security, or -apply it in payment- of Lynn’s
 
 *307
 
 debt; either by virtue of its charter, or, under the agreement between him and the. cashier.
 

 An objection, however, has been made, preliminarily, to this Court’s-noticing the deposition of Adam Lynn; because, as is alleged, it was taken after the cause was set down for hearing-, and. without any order-of the Court for that purpose.
 

 Admitting.this to have been irregular, no objection appears to have been made- in the Court below, to the reading of the deposition; and had it been made, it ought not to have prevailed even there; because the defendants cross-examined the witness, whicji would be considered a waiver of the irregularity.
 

 But, at all events, the objection cannot be listened to. here,' according to the express rule of this Court,
 
 (February
 
 Term, 1824,) which declares, “ that in all cases of equity and admiralty jurisdiction, no objection shall be allowed to be taken to the admissibility of any deposition, deed, grant, or other exhibit, found in the record as evidence; unless objection was taken thereto, in the Court below, and entered of record; but the same shall otherwise be deemed to have been admitted by consent.”
 

 It is deemed unnecessary to enter into an examination of the proofs in the cause, to show that, in point of fact, the stock in question was held by Lynn, in trust for the complainants; and that this fact was known to the Board of Directors, when it was transferred to him by James Sanderson. .The evidence establishes these points, beyond any reasonable ground of doubt; and the real question is, whether the bank,-with full knowledge of the Board of Directors, that this stock was not the property of Lynn, but held by him in trust for the appellees; can assert a; lien upon it for the private debt of Lynn, either under the char-. ter or the agreement, made with Chapin, and the transfer made by him to the- bank.
 

 The equity, of the case must strike every one very forcibly; as being decidedly with the appellees. And unless the claims of the- bank can be sustained, by the clear and positive provisions of its charter, the decree of the Court below ought to be affirmed.
 

 This claim is asserted, under the provisions of the 8d and 21st sections of the Act of Congress, incorporating the bank.
 

 The third section, after providing for-the opening the sub--scription for the stock, and pointing out the manner in which the excess shall be reduced, in case the subscription shall' exceed the number of shares allowed to be subscribed^ has this proviso; “Provided always, that it-is hereby expresslv understood, that all the subscriptions, and shares obtained in consequence thereof, shall be deemed and held to be for the sole and exclusive use and benefit of the persons, co-part*
 
 *308
 
 nerships, or boclies politic, subscribing, ■ or in whose behalf the subscriptions, respectively, shall be declared to be made, at the time of making the same; and all bargains, contracts; promises, agreements and engagements, in any wise contravening this provision, shall be void.” The 21st section declares, “that the shares of the capital stock, shall be transferable at any time, according to such rules as may be established, by the President and Directors; but no stock shall be transferred,- the
 
 holder
 
 thereof being indebted to the bank, until such debt be satisfied; except the President and Directors shall otherwise order it.”
 

 These sections, when taken together, have been supposed to require a construction, that the stock shall be deemed to belong to the person, in whose name it stands upon the books of the bank; and that the bank is not bound tó recognise the interest 'of any
 
 cestuy que trust;
 
 and may-refuse to permit the stock to be, transferred,‘whilst the nominal holder is indebted to the bank.
 

 This construction, however, in the opinic n of the Court, can-not be sustained. The third section must clearly be understood as applying to the first subscription for the stock; and was intended to prevent one person subscribing for stock in the name of another, for his own benefit. .
 

 . The construction of the 21st section, will depend upon the interpretation to be given to the word
 
 holder,
 
 as there used. This term is not, necessarily, restricted to the nominal holder. •It will admit of a broader and more enlarged meaning; and may-well be applied to the party, really, and beneficially interested in the stock.' And there, can be no good reasons why it should not be so applied, when the bank is fully apprized of all circumstances in relation to the stock, and knows who is the real holder thereof.
 

 This provision was intended to put into the hands of the bank, additional security for debts due from stockholders. But, when -it is known, that the person in whose name the stock' stands, has no interest in it, he will acquire no credit upon the strength of such stock; and that such was the understanding of the .bank, in this case, is clearly shown by the evidence. For,' when the transfer was "made to Lynn, he asked to have the discount continued 'to him, which Sanderson, from whom he pui'chased,.had upon the stock. But this was refused, on the ground that the stock did not belong to Lynn, but to Wise. There is no evidence in the cause to show, that Lynn’s debt was ..contracted with the. bank after the stock was transferred to him; or that he has, in any manner, obtained credit with the bank on account thereof; but the contrary is fairly to be understood from the proofs. — Nor does the bank allege the insol
 
 *309
 
 vency of Lynn
 
 \
 
 or thab it Has not a full and complete renaedy against him, without having recourse to this stock.
 

 To permit the bank, under such circumstances,, to avail itself of this stock' to satisfy a debt contracted without any re-’ ference to it as security, and with full knowledge that L/ynn held it in''trust for the ’complainant^’; would be repugnant to the most obvious principles of justicé and equity. Suppose' the trust had- been expressly ■ declared upon the transfer book of the bank; would there be the least colour for sustaining the claim now setup ? And yet Lynn would be the legal holder -Of the stock, in such case, as much, as in the one now-before the Court. Full notice of a trust draws after it all the consequences of an express declaration of the trust, as to all person* chargeable with such notice.
 

 It is a well settled rule in equity, that all persons coming into possession of trust property, with notice of. the trust, shall be considered as trustees, and bound, with respect to that special property, to the execution of the trust. (2
 
 Mad. Ch.
 
 125. 1
 
 Sch. & Lef. 262.)
 

 N< > ce to an agent is notice to his principal. If it were held otherwise, i,t would cause great inconvenience; and notice would be avoided in every case, by employing agents. 2
 
 Mad. Ch.
 
 326. Notice to the .Board of Directors, when this. stock w.as trahsferred to Lynn, that he held it as trustee only, was notice to the bank; and no subsequent change of Directors, could require’ a hew notice of this fact. So that if the bank had sustained any injury, by reason of a subsequent
 
 Board
 
 not knowing that Lynn held the stock in trust; it would result from the negligence of its own agents, and could not be visited upon the complainants. But no such injury is pretended. From any thing that appears to the contrary, Lynn is fully able to pay his debt to the bank.
 

 The case of the Union Bank of Georgetown
 
 vs.
 
 Laird, (2
 
 Wheat.
 
 390,) has been supposed to have a strong.beating upon the one now before the Court. But the circumstances of the two cases are very dissimilar. . In the former, Patton was the real, as well as the nominal holder of the stock, when he contracted his debt with. the bank, and when his acceptance fell due, and the lien of the bank,no doubt, attached upon the stock; and this.was previous to the assignment of it to Laird; and the-question there was, whether the bank had done any thing which ought to be considered a waiver of the, lien. But,’in the present case, Lynn.’never was the real owner of the stock, and. the bank well understood that he held it as trustee, and no lien for' Lynn’s debt ever attached upon it.
 

 •The áppellants cannot, therefore, under any provisions-' in their charter, apply this stock to their own use, for the debt of
 
 *310
 
 Lynn, to the prejudice of the rights of the known
 
 cestuy que trusts.
 
 '■
 

 Nor is there any ground upon which the claim of the bank can be sustained, under the agreement made between Lynn and Chapin, the cashier, and the transfer thereof, made by the latter to the bank.’ If the bank, as has already been shown, was chargeable with the knowledge that Lynn was a mere trustee, it could acquire no title from him, discharged of the trust; and if neccessary, might itself’ be compelled to execute the trust. Nor has the bank any title to this stock-under the transfer made by Chapin. This was. done without any legal authority, being .Several month's after'Lynin had revoked, the power, of attorney, under-which'the transfer was pretended to be made; and with full knowledge that Lynn was not the owner of the stock. But another and complete answer to the whole of this arrangement, between Chapin and Lynn, is; that it was made long after the hill.‘in this case was filed; and it is a well settled rule, that the Court is not bound to. take notice of any interest acquired in th’e-subject matter of the’suit, pending the dispute.
 

 The decree of. the Court below, must accordingly be affirmed, with costs.