HERRICK v. THROOP, impleaded, etc.

(*Circuit Court, N. D. New York.*  July 25, 1885.)

PLEDGE—FRAUD—EQUITABLE RELIEF.
   A., having borrowed $1,000 from B., delivered his trotting horse to him as
   security for the loan, under a contract providing for the return of the horse on
   payment of the loan and expenses of keeping, etc.  C. induced A., by falsely
   representing that B. was inimical to him, to execute an order for the delivery
   of the horse, reciting that C. had purchased it.  No consideration passed from
   C. to A., but A. executed a receipt for $3,000 in full for the horse.  *Held*, that
   A. was entitled in equity to have the receipt or bill of sale set aside, and to a
   decree directing that the horse be returned to him, or that he be paid the value
   thereof, if the horse could not be returned, upon the payment of whatever was
   due under the contract for the expense of keeping him.

On the seventh of October, 1882, the complainant delivered to the defendants Haggerty and Walden his valuable trotting horse, "Howard Jay," as security for a loan of $1,000, and received back from them the following agreement:

                                                    "OCTOBER 7, 1882.
"Article of agreement between Dr. William Haggerty and Dr. J. S. Walden,
   parties of the first part, and B. F. Herrick, party of the second:
   "The parties of the first part do hereby agree to resell the roan gelding, known
as 'Howard Jay,' for the consideration of one thousand dollars, lawful money
of the United States, and legitimate expenses incurred for keeping of said
horse; and it is further agreed by the parties of the first part and party of the

---

[1] See *Splawn* v. *Chew*, 60 Tex. 532.

second part that they shall share equally in all profits derived from said horse during the racing season of 1883.

"And it is hereby further agreed that if the said horse be repurchased, a reasonable compensation shall be given to the parties of the first; the term of said horse to be for one year from date.  WM. HAGGERTY,

"Witness: W. H. SNYDER.  J. S. WALDEN."

On the thirteenth of February, 1883, Haggerty then being in possession of the horse, the complainant signed the following papers in the handwriting of the defendant Throop:

"$3,000.

"Rec'd, Elmira, February 13, 1883, of B. H. Throop, three thousand dollars, in full for horse known as ' Howard Jay.'  B. F. HERRICK."

"*Dr. Wm. Haggerty, Scranton, Pa.*—DEAR SIR: On payment of my indebtedness to you for advance of $500, and the keeping of horse, ' Howard Jay,' now in your care, please deliver him to B. H. Throop, who has purchased said horse of me, and oblige,  Very truly,

"*Elmira, February* 13, 1883.  B. F. HERRICK."

No consideration whatever was paid for these papers. The complainant was induced to attach his signature, believing that they were necessary to effect the removal of the horse from the possession of Haggerty, who was represented as being hostile to complainant's interests. It is now alleged that the defendants Throop and Walden were engaged in a conspiracy to cheat and defraud the complainant, and that Throop had knowledge of and participated in the fraud by which complainant was persuaded to part with his interest in the horse. The defendant Throop maintains, on the contrary, that, having previously acquired the interest of the defendant Walden, he fairly and honestly purchased the complainant's interest, as well as that of Haggerty, and thus became the absolute owner of the horse.

Prior to the commencement of this action a demand for the horse, and an offer to pay all money advanced under the agreement of October 7th, was served upon the defendant Throop. The complainant contends that, the receipt and order being procured from him by fraud, he is still at liberty to redeem the horse pursuant to the original agreement; that Throop has only the rights which Haggerty and Walden possessed, having been subrogated thereto by his purchase from them, respectively. The defendant disputes the jurisdiction of the court, denies the fraud, and insists that he is the *bona fide* owner of the horse.

*Walter Lloyd Smith,* for complainant.

*J. McGuire,* for defendant Throop.

COXE, J. Upon the merits the principal issue is: Did the receipt, or bill of sale, of February 13th invest the defendant Throop with the absolute, indefeasible title to the horse? Did he intend to purchase, and did the complainant intend to sell? If the transaction was fair and honest, if, without fraudulent inducements, the complainant parted with his interest, even though the contract was unilateral and

greatly to his disadvantage, he is now remediless. But, on the contrary, if the papers were obtained from him by fraud as part of a conspiracy to deprive him of his property, if he was induced to believe that Haggerty was his enemy, and Throop his friend, and that by this means alone could his horse be transferred from the former to the latter; then, providing always that the defendant Throop was *particeps fraudis*, the complainant is entitled to the relief prayed for. It matters not how adroitly such a scheme may have been devised and carried out, with what technical precision each step may have been taken, or with what forms of law it may be surrounded; all this will avail the defendant nothing, if it appears that by his fraud and deception the rights of an innocent party have been invaded. A court of equity will swiftly overthrow the barriers behind which fraud has intrenched itself, no matter with what pains they may have been set up, or how broad and deep may be their foundations. If the testimony of Walden is to be believed, there can be no doubt that Throop was an active participator in the scheme to deprive Herrick of his horse. But Walden is discredited, and his testimony, were it not supported by other evidence, both direct and presumptive, would be wholly inadequate to sustain a charge of fraud. It is hardly possible, however, that his story is fabricated.

I cannot avoid the conclusion, after reading this record, that Throop knew that Herrick did not intend to part with his interest in the horse. Throop's relations with those who were the active agents in the conspiracy were of such a character that it is inconceivable that he was kept in ignorance of the manner in which the complainant was entrapped. That a gross fraud was perpetrated no one denies. Upon what theory can the defendant be exculpated? He knew that Herrick had a right to redeem the horse. He had seen and read the agreement of October 7th. He knew that the horse was worth more than the amount loaned upon him. He knew that if Herrick was to be despoiled of his interest it could make no possible difference to him whether Throop or Haggerty reaped the benefit. He knew, moreover, that not a dollar was paid by him, or any one else, to Herrick for the papers of February 13th. And yet Throop now insists that he actually believed that Herrick intended to pass the title irrevocably to him. Even though Haggerty were as unfriendly as he was represented, the complainant still had a valuable interest so long as the horse remained with him. What possible motive could have actuated Herrick to throw away this chance of redemption and profit in the future and convey his interest to a total stranger without one farthing of consideration? Throop must have known that no sane man would act in so irrational a manner. But when to the positive testimony and the presumptions arising from undisputed facts is added the evidence of Throop's repeated recognition of Herrick's title and his failure to assert his own, of his admissions that Herrick had the right to redeem, and of his agreement to return the horse upon

being paid the amount expended by him, the conviction becomes irresistible that Throop knew that he was not the absolute owner of the horse.

Although the case is *sui generis,* I cannot doubt that the court has jurisdiction. An action at law could not afford the relief which the complainant seeks. When the suit was commenced in the state court, the horse was in the possession of the defendant Throop. The legal title was in him. The chattel, which is the subject of the action, had no fixed market price. The horse had a peculiar worth, hardly capable of estimation in damages. He was valuable not only for what he had done in the past, but for what he might do in the future. The complaint demands relief as follows: *First,* for a construction of the contract of October 7th; *second,* for an accounting; *third,* for a specific performance; and, *fourth,* (though not in terms demanded,) that the receipt and order of February 13th be set aside as having been obtained by trickery and fraud. All these are matters of equitable cognizance. *Mechanics' Bank* v. *Seton,* 1 Pet. 299, 305; *Johnson* v. *Brooks,* 93 N. Y. 337, 343; *Cushman* v. *Thayer Manuf'g Co.* 76 N. Y. 365; *Mitchell* v. *Great Works M. & M. Co.* 2 Story, 649; *Bischoffsheim* v. *Baltzer,* 22 Blatchf. 281; S. C. 20 FED. REP. 890; *Pacific R. Co.* v. *Atlantic & P. R. Co.* 20 FED. REP. 277; Story, Eq. Jur. §§ 716–726.

The value of fast-trotting horses depends upon so many contingencies, is so theoretical, uncertain, and speculative that it is thought the court would not be justified in fixing the value here at a greater sum than $8,000.

The record does not furnish all the evidence necessary to enable the court to state the account correctly. The defendant was not required to anticipate that an account would be required, and it would be an anomalous proceeding, against his objection, to make a final adjudication upon this branch of the case. Unless, therefore, the parties can agree upon the amount, there must be a reference to a master for an accounting. Whether "a reasonable recompense" should be allowed depends somewhat upon the profits already received under the contract. This question is also referred to the master for his opinion, and can be finally determined upon the coming in of his report. There should, therefore, be a decree in favor of complainant for a return of the horse, or for $8,000, his value, in case a return cannot be had, upon payment to defendant of whatever sum may be found due upon the accounting. If, however, it should be found that the defendant is indebted to the complainant upon the account, the sum so found due should be added to the judgment in complainant's favor.

The complainant should recover costs.