**COLUMBUS OUTDOOR ADVERTISING CO. et al. v. HARRIS.**

No. 9076.

Circuit Court of Appeals, Sixth Circuit.

April 10, 1942.

Henry J. Linton, of Columbus, Ohio, for appellants.

H. W. Fraser, of Toledo, Ohio (Fraser, Effler, Shumaker & Winn and Ross W. Shumaker, all of Toledo, Ohio, on the brief), for appellee.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

As its name implies, the Columbus Outdoor Advertising Company (herein called the Columbus Company) was engaged in outdoor display advertising. Its capitalization was 200 shares of common stock owned by four shareholders, as follows: Thomas L. Kaplin, of record, 67 shares; Thomas L. Kaplin, beneficially, 64 shares; Wilbur Richard Ortman, 40 shares; Lillian R. Hood, 15 shares; Frank Mitchell, 14 shares.

Following negotiations with Ortman, the Vice-President and Secretary of the Columbus Company, Kaplin, a man of large experience and some financial means, purchased his stock in the Columbus Company about 1935 and became its President and General Manager. In the latter part of December 1936, Kaplin bought for $37,500 the entire capital stock, 250 shares, of the H. W. Gantner Company (herein called the Gantner Company), a competing concern.

On February 1, 1940, Kaplin gave to appellee, Emanuel J. Harris, an option, in writing, to purchase not less than 25 nor more than 50 shares of the stock of the Gantner Company, the option to be exercised at any time before January 2, 1941. The consideration for the option was Harris's agreement to give Kaplin two shares of the common stock of the Collingwood Realty Company (herein called the Collingwood Company) for each share of the Gantner Company which Harris should elect to acquire, and to perform legal services for Kaplin of the reasonable value of not more than $200.

In December, 1940, Harris, having performed the legal service required of him by the option, orally and in writing notified Kaplin that he would exercise his option to acquire 50 shares of the Gantner Company stock and tendered to Kaplin 100 shares of the Collingwood Company stock, and demanded of Kaplin that he deliver a proper certificate for 50 shares of the Gantner Company

Kaplin admitted the execution of the option but did not deliver the certificate for the 50 shares of the Gantner Company stock. He claimed that he was unable to do so because the Columbus Company, through Ortman and Hood, who constituted a majority of its board of directors, had set up a claim to all the Gantner Company stock, and that Ortman and Hatzo,

who constituted a majority of the board of the Gantner Company, would not transfer the certificates on the Gantner Company stock book from Kaplin to Harris. This adverse claim was based on the contention that Kaplin had bought all of the Gantner Company stock for the Columbus Company and was holding it in his name, constructively at least, as trustee for the Columbus Company.

Confronted with this situation, Harris, the appellee, filed his bill against Kaplin for specific performance and sought to restrain Kaplin from transferring the optioned shares to any other person and to restrain the Gantner Company, the Columbus Company, Hood, and Ortman, who was Vice-President and Secretary of the Columbus Company, and also Secretary of Gantner Company, and Hatzo, who was Assistant Secretary of the Gantner Company, from in any way attempting to cancel the certificate of stock in the Gantner Company held by Kaplin and from setting up any claim thereto in any other court or cause.

The bill also sought a decree specifically ordering the Gantner Company and Ortman, as its Secretary, to transfer and issue to Harris a certificate for the optioned stock and to cause the books and records of the Gantner Company to show that Harris was the record owner and holder thereof.

On application of appellee, the court granted a restraining order. A full hearing was had upon the motion of appellee for a temporary injunction and at its conclusion the parties stipulated that the case should be submitted upon its merits upon the record then made.

The court filed its findings of fact and conclusions of law and entered a decree sustaining the bill and granting the relief sought. Hence this appeal by the Columbus Company, the Gantner Company, Ortman, Hood and Hatzo. Kaplin did not appeal.

We think the decree was correct.

There are three contentions presented by appellants,—first, that appellee's suit was not brought in good faith; second, that the court, sitting in equity, has no jurisdiction; and third, that Kaplin, being an officer and director of the Columbus Company, was precluded from purchasing for himself the stock of the Gantner Company, and that his purchase must be regarded, under the doctrine of constructive trusts, as having been made for the Columbus Company.

The first proposition is based upon the fact, (1) that Harris and Kaplin married sisters; and (2) that they and their wives were stockholders in the Collingwood Company. We think that the relationship between Harris and Kaplin created no more than an ill-founded suspicion that Harris brought his suit in bad faith.

The attack upon the equity jurisdiction of the court is without merit. Appellee had no plain, adequate and complete remedy at law. As between appellee and Kaplin, it is extremely doubtful whether appellee could have been pecuniarily compensated in a suit at law for Kaplin's breach. The Gantner Company stock was not listed on any exchange, it had no market value and was not for sale, and there was no substantial basis upon which damages could be computed. See Hyer v. Richmond Trac. Co., 168 U.S. 471, 483, 18 S.Ct. 114, 42 L.Ed. 547; Mutual Oil Co. v. Hills, 9 Cir., 248 F. 257, 260; Goodisson v. North American Sec. Co., 40 Ohio App. 85, 178 N.E. 29. It is obvious that as between appellee and all other parties he had no remedy except in equity. The machinery of the law was not designed either to remove the cloud upon appellee's title caused by the claim of the Columbus Company, or to compel the Gantner Company to transfer the optioned stock to him. Mechanics' Bank v. Seton, 1 Pet. 299, 26 U.S. 299, 304, 7 L.Ed. 152; Hubbard v. Bank of United States, Fed.Cas. page 777, No. 6,815.

We think the finding of the District Court, that the purchase by Kaplin of the Gantner Company stock was made for himself in good faith and not in derogation of his fiduciary relationship to the Columbus Company and its stockholders, is sustained by the evidence.

There are in the record copies of the minutes of three meetings of the board of directors of the Columbus Company. The first was held on December 4, 1936, at which all directors, Kaplin, Ortman and Hood, were present. According to the minutes, this meeting was especially called "for the purpose of discussing the purchase of the Gantner Company by Mr. Kaplin." The minutes continue as follows:

"Mr. Kaplin explained in detail his purchase arrangement and also explained in order for him to conclude the purchase of

The H. W. Gantner Company it will be necessary that The Columbus Outdoor Advertising Company take a five year lease on the Gantner property on South High Street at a monthly rental of $150.00. Mr. Kaplin reports that an inspection of the property shows that it is well suited for our purpose and is a reasonable rental for the premises.

"Mr. Ortman made a motion to approve this, which motion was seconded by Mrs. Hood, and unanimously carried.

"There being no further business, motion was duly made and seconded and unanimously carried that the directors' meeting be adjourned.

"(Signed)    W. R. Ortman, Secretary,
          "Thos. L. Kaplin, President."

The second was held on December 18, 1936, at which all the directors, Kaplin, Ortman and Hood, were present. The minutes disclose that "Mr. Kaplin reported that he had purchased the H. W. Gantner Company and will permit The Columbus Outdoor Advertising Company to use all the Gantner Company poster panels, the twenty Lazarus Painted Bulletins, and also all materials, equipment, etc., at a price and on payments to be agreed upon at a later date."

Immediately after the sentence which we have just quoted, there originally appeared this sentence, to wit, "Mrs. Hood moved, duly seconded by Mr. Ortman, that the offer made by Mr. Kaplin be accepted." Then followed the words, "Motion unanimously carried." These last two quoted sentences were deleted from the minutes about the time appellants made demand upon Kaplin, which was about four years after his purchase of the Gantner Company stock. It is certain that the deletions by whomsoever made were not made in the interest of Kaplin.

The third meeting was held on December 23, 1936, at which all the directors were present. The minutes of this meeting disclosed that,—

"Mr. Kaplin reported that he had completed the purchase of the H. W. Gantner Company and that he is now in full control of this company, and offered to lease to The Columbus Outdoor Advertising Company for a period of one year from January 1, 1937, all of the present poster panels, approximately 81, on a monthly rental of $9.00 per panel, and will continue during this period to remain out of competition of The Columbus Outdoor Advertising Company for locations, leases, and to discontinue the building of any additional poster panels.

"Mrs. Hood moved, duly seconded by Mr. Ortman that the offer made by Mr. Kaplin be accepted. The motion carried.

"Mr. Kaplin also offered on behalf of the H. W. Gantner Company to sell to The Columbus Outdoor Advertising Company autos and trucks $736.35, office equipment $136.93, prepaid leases $741.97, material as per inventory $1956.50, total $3598.75, also twenty Lazarus Bulletins including leases at $250.00 each, shop equipment $1009.09, payment on the above to be made as soon as the company has sufficient cash and should be evidenced by two ninety-day notes, one for the first named total, and the other for $6,009.09.

"Mrs. Hood moved, duly seconded by Mr. Ortman that The Columbus Outdoor Advertising Company is to purchase the above mentioned and same is approved herewith. Motion unanimously carried.
"(Signed)    W. R. Ortman, Secretary,
          "Thos. L. Kaplin, President."

Each of these three sets of minutes was signed by Kaplin as President and by Ortman as Secretary, and each upon its face is the official and authentic corporate record. They disclose that Kaplin, in the purchase of the Gantner Company, was dealing at arm's length not only with the Columbus Company but with Ortman and Hood, its directors, and that it was understood and agreed that he was purchasing for himself.

Appellants seek to destroy the evidential effect of these minutes by evidence tending to show that they were not correct; that Mrs. Hood, a stenographer, kept shorthand notes of what took place; that these notes, when copied by her and introduced as evidence, indicate that Kaplin purchased the Gantner Company stock for the Columbus Company. But this evidence is weakened by the admission of Mrs. Hood that she herself pasted the original minutes in the minute book.

Hatzo, Ortman and Hood each testified that Kaplin made certain statements to them in the nature of admissions that he had purchased the Gantner Company stock for the Columbus Company but Kaplin unconditionally denied making such statements.

There was also testimony tending to show that after the purchase by Kaplin, the Columbus Company and the Gantner Company were operated in competition with each other, but upon the other hand, there is evidence which the court would be justified in believing that after the purchase the companies were managed cooperatively, with marked advantages to each.

■ We find no reason to disagree with the finding that Kaplin purchased the Gantner Company stock for himself. The official minutes of the Columbus Company were the best evidence of what was done. The District Court was the judge of the credibility of the witnesses and the weight to be given to their testimony, and the weight of the evidence is to be determined, not by the number of witnesses on either side, but by a consideration of the evidence in the aggregate. See Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■■ Every such purchase by a president-director is not void as a matter of law and equity as between himself and his corporation, with which he stands in a fiduciary relationship. See Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 590, 23 L.Ed. 328; Cowell v. McMillin, 9 Cir., 177 F. 25, 39; Barr v. Pittsburgh Plate Glass Co., C. C., 51 F. 33, 37; Teller v. Tonopah & G. R. R. Co., C.C., 155 F. 482, 486; Colorado & Utah Coal Co. v. Harris, 97 Colo. 309, 49 P.2d 429; Detroit Fid. & Sur. Co. v. First Natl. Bank, Tex.Civ.App., 66 S.W.2d 406; see also United States Rolling Stock Co. v. Atlantic & G. W. R. Co., 34 Ohio St. 450, 465, 32 Am.Rep. 380. Such a purchase, however, will be closely scrutinized and the burden is upon the purchaser or those claiming through him to justify it. Jesup v. Illinois Cent. R. R. Co., C.C., 43 F. 483; Teller v. Tonopah & G. R. R. Co., supra, 155 F. page 486.

The vital question here is, whether Kaplin's purchase of the Gantner Company stock was an honest transaction for the benefit of the Columbus Company and its shareholders, or whether it was designed primarily for his own gain. The District Court found that the purchase was in good faith and the evidence supports the findings.

When Kaplin acquired his interest in the Columbus Company in 1935, it was being managed and operated by Ortman, Hood and Mitchell, all of whom had received their shares as legacies from a former owner. The Company was without cash, was losing money and its capital stock was impaired. It was without experienced leadership. When Kaplin became President and General Manager he at once assumed active leadership and through his business and financial management the company became prosperous. A very great part of its success was no doubt due to elimination of competition by the purchase of the Gantner Company stock. The proposed purchase was discussed many times between Kaplin and the other directors but the Company could not purchase for lack of funds. There was never even a suggestion that the Columbus Company should buy the Gantner Company stock. We are not dealing with a situation where the directors of a corporation have undertaken for their own benefit to take over a contract of the corporation because of its financial inability to perform such as is found in Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121. There was nothing secretive about the transaction. The minutes set forth that it was fully disclosed by Kaplin to the other directors, Ortman and Hood, and was approved by them. Indeed, the record discloses that the Columbus Company advanced $2500 to Kaplin upon the purchase price which he afterwards repaid, and that the Columbus Company gave its notes for the property it bought from the Gantner Company through Kaplin, as indicated in the minutes of December 23, 1936, which notes it afterwards paid.

Further, in considering the equity of appellants' claim, it must be kept in mind that they waited nearly four years before asserting it, and not then until after Kaplin's option to Harris. See Twin-Lick Oil Co. v. Marbury, supra, 91 U.S. page 593, 23 L.Ed. 328.

■ Finally, it is said that Kaplin did not disclose the nature of his purchase to Mitchell, a stockholder but not a director of the Columbus Company. Mitchell was not a party to the suit but appeared by counsel, who took part in the trial and filed a brief. He either knew, or by the slightest diligence might have known, what the minutes of the Columbus Company disclosed about the purchase of the Gantner Company stock. He did not testify and the inference is that he did know. See Jesup v. Illinois Cent. R. R. Co., supra, 43 F. page 503.

Decree affirmed.