[No. 1664.]

## WHITE SEWING MACHINE COMPANY, a CORPORATION, RESPONDENT, *v.* EDWIN FOWLER, A. J. CLARK, C. E. CLOUGH, AND JOHN SUNDERLAND, APPELLANTS.

BONDS—CONSIDERATION.

1. A bond reciting that it is for value received, and showing that it is to enable the principal to obtain an extension of credit, is on a sufficient consideration to bind the sureties.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *B. F. Curler*, District Judge.

Action by White Sewing Machine Company against Edwin Fowler and others on a bond. Judgment for plaintiff, and defendants appeal. **Affirmed.**

The facts sufficiently appear in the opinion.

*Norcross & Orr*, for Appellants:

I. This is an appeal from the judgment and from the order overruling defendants' demurrer to plaintiff's complaint herein. Judge Thomas Wren was the original counsel for the defendants in this action, and the present counsel did not come into the case until after his death. He filed a demurrer to the complaint, and, not having left a brief covering the points of law made during the course of his argument, we are left without the benefit of his investigations and very valuable opinion upon the questions of law involved.

II. While counsel for plaintiff have included in this com-

plaint a reference to the "bond" given by the defendants, Clark, Sunderland, and Clough, as securities, and have attached a copy of that document to their pleadings, their complaint has really been based upon the notes and contract of Fowler with which the other defendants had nothing to do. This is manifest from the allegations of fact in the complaint and from the prayer for judgment therein. This being the case, the complaint does not state a cause of action against Clark, Sunderland, and Clough, even if it could be held to state one against Fowler.

III. If this complaint is an action upon the "bond," it clearly fails to state a cause of action against any of the defendants, Clark, Sunderland, and Clough, for it appears upon the face of the bond that it is void under the statute of this state. Regardless of the form of the instrument, the "bond" is simply a contract of suretyship and is so considered and treated as such in plaintiff's complaint. (Paragraphs 2 and 3 of Complaint.) As such it is an agreement on the part of the defendants, Clark, Sunderland, and Clough, "to answer for the debt, default, or miscarriage" of Fowler. (27 Am. & Eng. Ency. of Law, 2d ed., p. 431; Clark on Contracts, p. 95.)

IV. This contract is absolutely void under the statutes of this state, for the reason it does not express the consideration upon which it is based. The complaint alleges in paragraphs 2 and 3 what the consideration was for the making of this contract of suretyship, but the instrument itself nowhere even hints at such a consideration, nor is it claimed there is any other written document expressing the consideration. (Comp. Laws, sec. 2700; *Van Doren* v. *Tjader*, 1 Nev. 387; *Lightle* v. *Berning*, 15 Nev. 389; *Simpson* v. *Harris*, 21 Nev. 375.)

V. The judgment in this case was entered by the clerk upon "default" of the defendants' failure to answer. This is not a case in which the clerk without order of court could enter judgment. In any event the judgment is entered upon the notes of the defendant, Fowler, with which the defendants, Clark, Sunderland, and Clough, have nothing to do. It is made to bear interest at 8 per cent as specified in the notes, while, if judgment were rendered on the account of "bond," it could only bear 7 per cent interest.

*Cooke & Ayres*, for Respondent:

I. Reserving the right to hereafter present authorities to the effect that the bond sued on is an original undertaking, and therefore not within the statute of frauds, still, in order to meet counsel squarely on their own ground, we will admit for the purposes of the argument only that the bond in this case is "a special promise to answer for the debt of another," and, as such, should express the consideration. We must conclude that counsel have not carefully examined the bond when they state that it does not. For the consideration is expressed twice, first in express words, and, second, by clear and natural implication, either of which is sufficient under the statute of fraud. "For value received" is a sufficient expression of the consideration to satisfy the requirement of the statute of frauds. The binding clause in this bond is as follows: "Know all men by these presents, that Edwin Fowler * * * are held and firmly bound severally and individually * * * in the sum of two thousand dollars * * * for value received," etc. From the leading text books we find the following language employed: "A memorandum expressed to be for 'value received' is held to state the consideration sufficiently for the purpose of the statute." (Browne on the Statute of Frauds, 5th ed., p. 542, sec. 408, and cases cited in note 3.) "But where the consideration is required to be expressed, it need not be defined; and, therefore, the words 'value received' are deemed a sufficient expression of it." (Daniel on Negotiable Instruments, sec. 1767, vol. 2, p. 797.) "In England and many of the United States the memorandum will be insufficient unless it contains the consideration for the promise. 'Value received' is a sufficient statement of the consideration." (Am. & Eng. Ency. Law, 1st ed., vol. 8, pp. 727, 729, and note 1.) To the same effect see, also, 3 Parsons on Contracts, 16; 1 Reed Stat. Frauds, sec. 430; Brant, Suretyship, sec. 70; Baylies, Sureties, 87. Not only are the text books unanimous upon this point, but all of the cases, so far as we have been able to ascertain, are to the effect that the words "value received" are a sufficient expression of the consideration. All the cases in the Century Digest are to that effect, and there are

none to the contrary cited in any of the American annual digests issued subsequently to 1896, when the Century ends. And, until counsel for appellants cite us to such a case, we shall feel confident, as we do now, that there is none such in existence. (See 23 Century Digest, col. 2242, sec. 214b; col. 2348, sec. 217a.) The matter is thoroughly discussed and exhaustively treated in 60 Am. St. Rep., in a note commencing on page 432 and ending on page 441. We quote the following from page 438: "The words 'for value received' in a contract of guaranty is a sufficient expression of the consideration in a contract. (*Day* v. *Elmore*, 4 Wis. 190; *Connecticut Ins. Co.* v. *Cleveland R. R. Co.*, 41 Barb. 9; *Howard* v. *Holbrook*, 9 Bos. 237; *Whitney* v. *Stearns*, 16 Me. 394; *Douglass* v. *Howland*, 24 Wend. 35; *Dahlman* v. *Hammel*, 45 Wis. 466.) This is true in a contract for the sale of lands (*Cheney* v. *Cook*, 7 Wis. 413); or of a contract of guaranty of a promissory note (*Miller* v. *Cook*, 23 N. Y. 495; *Osborn* v. *Baker*, 34 Minn. 307; 57 Am. Rep. 55; *Dahlman* v. *Hammel*, 45 Wis. 466; *Martin* v. *Hazzard Powder Co.*, 2 Colo. 596; *Cooper* v. *Dedrick*, 22 Barb. 516; *Woodward* v. *Pickett*, Dual (S. C.) 30; *Emerson* v. *Aultman*, 69 Md. 125); or in a written guaranty of the payment of a bond and mortgage (*Smith* v. *Northrup*, 80 Hun, 65); or other written instrument (*Edelen* v. *Gough*, 5 Gill, 103; *Flowers* v. *Steiner*, 108 Ala. 440.)"

Upon a point where the authorities are so numerous and unanimous we feel as if we are encroaching upon the time and patience of the court in attempting to quote any number of cases; but, before leaving this phase of the subject, we would like to quote from one of the cases from a state where the statute is almost identical with our own. Beginning on page 56 of 57 Am. Rep. we find: "The statute provides that no action shall be maintained upon any special promise to answer for the debt, default, or doings of another, unless such agreement, or some note or memorandum thereof expressing the consideration, is in writing and subscribed by the party charged therewith. If this was a new question, we have not much doubt but that we would hold with the respondent that the words 'for value received,' which

acknowledge the receipt of a consideration, do not express the consideration   But we think that under the authorities the question is foreclosed, and is really no longer an open one.   So far as the question has ever been passed upon by the courts of this country, it has been invariably held, so far as we can ascertain, that the words 'for value received' sufficiently express the consideration to amount to a compliance with the requirements of the statute.   That this is the law in New York, the leading commercial state of the Union, would now seem settled beyond doubt.  *  *  *  The text writers also generally state the law to be that the words 'for value received' sufficiently express the consideration. (3 Pars. Cont. 16; Browne Stat. Frauds, sec. 408a; 1 Reed Stat. Frauds, sec. 430; Brant Suretyship, sec. 70; Dan. Neg. Inst. sec. 1767; Baylies Sureties, 87.)   The result of all this is, we are satisfied that it has become the general understanding that this is a sufficient compliance with the statute, and that the business engagements of the country are commonly made with the understanding.   Under these circumstances we do not feel at liberty to adopt a different rule.   As was said in *Day* v. *Elmore, supra*, the mischief of attempting to do so would be much greater than that of a quiet acquiescence in the one already established, as the latter may answer a liberal construction of the statute.   But we are satisfied, not only that the rule does not work any mischief, but also that it is an eminently convenient one." (*Osborne* v. *Baker*, 34 Minn. 307; 57 Am. Rep. 55.)   As stated in the case last cited, "the business engagements of the country are commonly made" with this understanding of the statute. And the bond in this instance bears upon its face the fact that it was made with this understanding.   It would, therefore, not only be a general hardship to overrule this well-established construction of the statute of frauds, but would in this particular case work a hardship and grievous inconvenience, even to the extent of depriving plaintiff of the right to recover an indebtedness suffered to be incurred by defendants upon a bond drawn directly in view of this construction of the statute.

II.   The Encyclopedia of Law lays down the rule: "A con-

tract of suretyship to be valid must be supported by a sufficient consideration of some benefit or value either to the principal or surety, or some detriment to the creditor.    It is an elementary principle that where a person contemporaneously becomes surety for a debt, or for the performance of a duty, of a third person, the consideration is the favor the surety receives from a compliance with his express or implied request that credit should be given to the principal.  (27 Am. & Eng. Ency. Law, 2d ed., 445–6, and notes 7 and 8, p. 445 and 1 and 2, p. 446.).  If, then, it appears from the face of the bond that the "principal" (Fowler) received "some benefit" or that the "creditor" (plaintiff) some "detriment," or that the debt for which the defendants, Clark, Clough, and Sunderland, became surety for Fowler was contemporaneous with the execution of the bond and not antecedent thereto, so that the "consideration is the favor the surety receives from a compliance with his express or implied request that credit be given to" Fowler, then the bond sufficiently expresses the consideration to satisfy the statute of frauds and is not invalid, as stated in appellants' brief.    It is not necessary that the consideration be expressed in act or affirmative words, but it is sufficient if the same can be ascertained from necessary implication.    "The rule is sometimes stated to be that it is sufficient if it appear by necessary implication from the terms of the writing."  (Browne, Stat. Frauds, p. 532, sec. 399, and note 3.)

III.   If these statements above quoted are a correct statement of the law, it follows then that the consideration of the bond in this case is sufficient, and is also sufficiently stated therein, if the language of the bond itself "shows with reasonable clearness," either positively or by "natural implication," that the bond was executed for the purpose of procuring any one of the following:  (1) Some "benefit or value to the principal" (Fowler);  (2) "Some detriment to the creditor" (plaintiff);  (3) "The giving of credit to the principal debtor" (Fowler) by plaintiff.   Does the bond in this case contain any of the foregoing requisites?  We think that all of them appear from the bond itself.   We quote from the bond: "That if * * * Edwin Fowler * * * shall well and truly * * *

and every indebtedness or liability now existing, or which may hereafter in any manner exist, or be incurred on the part of said Edwin Fowler to the White Sewing Machine Company, * * * whether such indebtedness shall exist in the shape of book accounts, notes, * * * consignments of property or merchandise, * * * or whether the same shall arise out of the purchase and sale of sewing machines," etc.

IV. Browne, in his work on the Statute of Frauds, lays down the rule: "A rule of construction, however, well established in the general law of evidence, but of comparatively recent application, it would seem, to questions of this nature, is often called to the aid of a memorandum of guaranty, where the terms used are ambiguous and may refer either to a preëxisting liability of a third party to the creditor, or to one which is allowed to be incurred contemporaneously with and in confidence of the defendant's undertaking. This is the admission of parol evidence to show the circumstances of the parties at the time of the contracting, in order to understand the language they employ. Under this rule a memorandum of guaranty addressed to the plaintiffs in the words 'In consideration of your being in advance to the third party,' was sustained by parol evidence, showing that at the time of executing it no advance had been made." (Browne, Stat. Frauds, sec. 403.) The remainder of the section contains several illustrations of instances where the rule was applied and the expression of the consideration held sufficient.

V. Now, as we understand the law, anything which it is competent or permissible to show by parol evidence is fully and completely established by an allegation in the complaint not denied by the defendants. As there is in this case no answer, there is, therefore, no denial of any of the allegations of the complaint. In paragraph 3 of the complaint, among other things, it is alleged that the bond was given by defendants "to secure the credit of the defendant, Fowler, and to enable said Fowler to purchase sewing machines from plaintiff on credit," and in paragraph 4 that "relying upon said bond and the security so furnished by said defendants, Clark, Clough, and Sunderland, and by each of them severally," the plaintiff extended credit to Fowler, and Fowler

was permitted to and did become indebted to plaintiff in the manner set out at length in said paragraph—the only indebtedness in said complaint alleged to be due from Fowler to plaintiff or for which this action is prosecuted. And these, in connection with paragraph 2, settle clearly that the bond was given for a prospective and not for a preëxisting indebtedness.

From these authorities and for the reasons aforesaid we submit that the bond in this case fulfils the requirement of our statute "expressing the consideration." While authorities are cited upon the assumption that the bond in this case is within the statute of frauds, there is at least some doubt whether or not it is an original undertaking and therefore within the statute. In *Maddox* v. *Pierce*, 74 Ga. 838, the court laid down the rule: "Where one sells goods to one to whom he had refused to sell on his own credit, on the request of a third party to let him have the goods, and that he would see it paid, the promise of the latter is an original undertaking, and not within the statute of frauds." It has been further held: "A direct and unconditional promise by one to pay for goods furnished to a third party, made prior to the delivery of the goods to such third party, is an original undertaking, which is not within the statute of frauds." (*Wills* v. *Ross*, 40 Am. Rep. 279; *Larson* v. *Jensen*, 53 Mich. 427; 19 N. W. 130; *Lindsey* v. *Heaton*, 27 Neb. 662; 43 N. W. 420; *Champion* v. *Doty*, 31 Wis. 190.)

However, we deem it of little importance whether this is construed within or without the statute of frauds, as it is in writing "expressing the consideration" to the very fullest intent of the statute.

VI. We cannot quite understand the position of counsel for appellants when they say in one sentence that the clerk could not enter judgment in this case without an order of court, and then, in the next sentence, "the judgment is entered upon the notes," etc. Section 152 of our Practice Act (Comp. Laws, sec. 3247) provides for the entry of judgment by default by the clerk without order of court in all actions "arising upon a contract for the recovery of money or damages only." Surely an action for money due upon a promis-

sory note (or on several notes) is an "action arising upon a contract for the recovery of money or damages only." We cannot understand the position of counsel or reconcile their two statements with our statute. And, from the real facts of the case, *i. e.*, that this is an action to recover against the defendants jointly upon the bond heretofore so often referred to, it is still an action "arising upon a contract for the recovery of money or damages only." The only thing whatever that is in any way sought to be recovered in this action is an amount of money equal to the indebtedness of Fowler to plaintiff, not exceeding the penalty of the bond ($2,000), "together with 10 per cent thereon in case of suit upon this bond," for counsel fees.

While appellants state that this is not a case where the clerk could enter judgment without an order of court, they do not tell us why or point out any defect in the entry of judgment. We are, therefore, left largely in doubt as to their position. If it is their contention that the clerk could not enter judgment in a case where counsel fees are provided for, we are willing to meet them upon their own ground. Not only does the bond provide that 10 per cent shall be added to the amount of recovery in case of suit, but the notes each and all provide for a 10-per-cent counsel fee, which, in case of suit upon the notes, becomes an integral part and portion of the indebtedness for which the bond is security—just as much a part thereof as the principal itself. The bond itself does not mention "counsel fees," but limits the liability of the signers thereof to $2,000, "together with 10 per cent thereon in case of suit upon this bond," or in case of suit the sureties become liable for the indebtedness of Fowler to the extent of $2,200 instead of only $2,000. This is surely equivalent to a statement that any attorney's fees provided for in any evidence of indebtedness of Fowler to the plaintiff (not exceeding 10 per cent of such indebtedness) shall, in case of suit, be considered as much a part of the indebtedness as the principal or interest, and be secured by the bond.

In California, where their statute (C. C. P., sec. 585) is almost identical with ours, it was held that the clerk had

authority to enter a judgment in a case where attorney's fees were stipulated for in the contract sued on. The court treated the contention of counsel for appellants (that the clerk did not have such authority) with very scant courtesy, and disposed of the entire subject in the following words: "The judgment attacked was entered by the clerk under sec. 585, subd. 1, of the Code of Civil Procedure, which provides: That in an action arising upon contract for the recovery of money or damages only, if no answer has been filed with the clerk, * . * * the clerk * * * must enter the default of the defendant, and immediately thereafter enter judgment. * * * The action of the clerk in estimating and adding the amount of the attorney's fees to the judgment, under the above circumstances, was as purely ministerial as was his calculation of interest upon the principal sum of the note in accordance with the terms and averments of the complaint. The clerk was acting within the scope of his authority in entering judgment." (*Alexander* v. *McDow*, 108 Cal. 25; 41 Pac. 25; also, see *Wood* v. *Winship Machine Co.*, 83 Ala. 424; 3 South. 757.)

We do not apprehend that counsel will argue that an action upon a contract of suretyship such as this one is not "an action arising upon a contract for the recovery of money or damages only," and, therefore, refrain from the submission .of authorities upon that point.

VII. The notice of appeal, by which appellants sought to appeal from the district court to this court, gives notice that "defendants in the above-entitled action, and each of them, hereby appeal to the Supreme Court of the State of Nevada, from the judgment therein entered," and, also, "from the order overruling defendants' demurrer to plaintiff's complaint," etc.

Here are two appeals, necessitating a separate undertaking for each appeal, the only exception to this rule being in the single case of an appeal from a final judgment and an order denying a motion for a new trial. (Spelling on New Trials and Appellate Prac., sec. 548, and cases cited; *Granger* v. *Robinson*, 114 Cal. 631; *Sharon* v. *Sharon*, 68 Cal. 326; *People* v. *Center*, 61 Cal. 191; *Mosely* v. *Shepherd*, 1 Fla. 155; *Clairteaux's Succession*, 35 La. Ann. 1178; *Harris* v. *Harris*, 2 R. I.

538; *Chambers* v. *Fiske*, 9 Tex. 261; *Sweet* v. *Mitchell*, 17 Wis. 125; *White* v. *Appleton*, 14 Wis. 190.) There is only one undertaking on appeal in this case, and it recited both appeals as follows: "Whereas, the defendants * * * have appealed * * * from a judgment, * * * and, also, from the order overruling defendants' demurrer," etc., and concluded with the promises of the defendants that "in consideration of the premises, and of such appeal, they will pay all damages and costs which may be awarded against them on appeal, not exceeding three hundred dollars," etc. This undertaking is so ambiguous that it cannot be ascertained to what defendants refer. The appeals should both be dismissed. (Spelling on New Trials, sec. 549, and cases cited, especially note 29.)

*Norcross & Orr*, for Appellants, in reply:

I. The only American states which have embodied in the statute the provision that the consideration must be expressed in writing, are the following: Alabama, California (prior to 1874), Colorado, Idaho, Minnesota, Montana, Nevada, New York (from 1830 to 1863), Oregon, and Utah. (Reed on Statute of Frauds, vol. 1, sec. 425.)

II. Wherever the question has been passed upon by any of the foregoing states it has invariably been held that the consideration for the promise must be expressed in writing. (*Van Doren* v. *Tjader*, 1 Nev. 387; *Lightle* v. *Berning*, 15 Nev. 389; *Simpson* v. *Harris*, 21 Nev. 375; *Ellison* v. *Jackson W. Co.*, 12 Cal. 542–552; *Crooks* v. *Tulley*, 50 Cal. 257; *Dufoit* v. *Gorman*, 1 Minn. 309; *Wilson Sewing Mac. Co.* v. *Schnell*, 20 Minn. 40; *Taylor* v. *Pratt*, 3 Wis. 674; *Parry* v. *Spikes*, 40 Wis. 385; *Corbitt* v. *Gaslight Co.*, 6 Or. 407.)

III. It is true that in one or two states, by an admittedly strained construction, the court has held that the words "for value received" would answer for an expression of the consideration. Take, for example, the authority relied upon by counsel for respondent to establish the principle that the words "for value received" sufficiently express the consideration, and the court has to resort to the principle of *stare decisis* to uphold a position it admits to be erroneous. The

court says:  "If this was a new question, we have not much doubt that we would hold with the respondent that the words 'for value received,' which acknowledges the receipt of *a* consideration, do not express *the* consideration." (34 Minn. 307.)

IV.  In this state, were the question a new one, we submit that this court would be in duty bound to give the statute the construction manifestly intended by the legislature, to wit, that the writing must express *the* consideration.  But the question not only is not new, but this court has held that *the* consideration must be expressed.  In *Van Doren* v. *Tjader*, *supra*, this court said:  "The contract of guaranty is a separate and independent contract involving duties and imposing liabilities very different from those created by the original contract, to which it is collateral.  It is a promise 'to answer for the debt, default, or miscarriage of another,' and by the statute of frauds is made void unless there be some note or memorandum thereof in writing, expressing *the* consideration *upon which it is based.*"  What is the consideration upon which the bond in question in this action is based?  The bond itself does not specify any of the considerations upon which it is based, but from the allegations of the complaint we receive enlightenment as to what some of them were.  It alleges (paragraph 3) that, "among *other* things, to secure the credit of the defendant Fowler, and to enable said Fowler to purchase sewing machines from plaintiff on credit" constituted the consideration for Clark, Clough, and Sunderland agreeing to answer for the debt, default, or miscarriage of Fowler.  What the "other things" were which formed part of the consideration for the support of the promise, we are left totally in the dark concerning.  It seems, however, that the defendant Fowler had credit with the plaintiff company and it was to be secured; why, we do not know.  The bond nowhere recites specifically or by implication that Fowler could not have purchased sewing machines without the guaranty of the other defendants.  If we were permitted to resort to the realms of speculation we might surmise various considerations which might have been sufficient to have supported the promise in question.  But the very object of the

statute was to avoid the complications that would surely arise from such a condition.

In the civil and criminal practice of this state the bonds and undertakings universally recite the real consideration upon which they are based. Hence, not only by judicial decision, but by universal practice, has the real meaning of our statute been settled that the actual consideration of a promise to answer for the debt, default, or miscarriage of another must be expressed in exact terms, and not by a meaningless expression, such as "value received."

V. Like many other of our statutes this particular statute was doubtless adopted from the statute of California which existed in that state prior to 1874, and which received judicial interpretation prior to its adoption into the laws of our state. (*Rogers* v. *Schulenburg*, 111 Cal. 284–5.) In the case of *Crooks* v. *Tulley*, 50 Cal. 257, the court said: "It is clearly a collateral contract, pure and simple; and, though based upon a sufficient consideration, is fatally defective in that it fails to express the consideration in writing, as required by our statute of frauds." (See, also, 12 Cal. 542.) A further evidence of the fact that the old California statute required that the consideration be actually expressed in terms is shown by the fact that the statute was amended so as to expressly provide that the consideration need not be expressed at all.

VI. The contention of counsel that the consideration for the bond is expressed by implication, while ingenious, is hardly convincing. Portions of the *condition* of the bond are referred to to establish the consideration. The condition is one thing, and the consideration is altogether different. From the condition of a bond we may possibly be able to guess at what the consideration might be, but yet it may with reason be many things having not even a remote relationship to the condition. It seems to us that the very object of our statute was to obviate controversies such as exist here over whether there was any consideration, and, if so, what it was.

If experience in the business affairs of our country has demonstrated that it is better not to have the requirement contained in our statute that the consideration be expressed,

the matter can easily be corrected by amendment of our statute, as has been done in California and New York.

This court has repeatedly held, as in the case of *Ash* v. *Parkinson,* 5 Nev. 16, that "with the question of the policy or expediency of a statute the judicial department has nothing to do; in that regard the legislature is supreme."

We are well aware that it is the policy of courts to uphold, if possible, written obligations entered into in the ordinary course of business, but we submit that an agreement so unconscionable as this one appears on its face to be is not deserving of any consideration other than that which the strict letter of the law requires.

VII.    The bond in this case is not an original undertaking, but is clearly within the statute of frauds. ( *Wilson Sewing Mac. Co.* v. *Schnell*, 20 Minn. 40.)

VIII.    The purely technical point raised by counsel for respondent in the motion to dismiss the appeal, we think, is clearly without merit.    The appeal as taken in this case is in accordance with the practice in this state.    Precisely the same questions are involved whether we consider the appeal from the judgment or the order overruling the demurrer. However, we think the point is answered adversely to the contention of respondent in *Edgecomb* v. *His Creditors*, 19 Nev. 151.

By the Court, TALBOT, J.:

In part it is alleged in the complaint "that in order, among other things, to secure the credit of the defendant Fowler, and to enable said Fowler to purchase sewing machines from plaintiff upon credit, the defendants A. J. Clark, C. E. Clough, and John Sunderland, and each and every of them, together with the defendant Edwin Fowler, did make, execute, and deliver to plaintiff a bond bearing date the 18th day of June, 1902, in the sum of $2,000, undertaking, among other things, that the defendant Edwin Fowler should well and truly pay any and every indebtedness or liability which might in any manner exist or be incurred on the part of said Edwin Fowler to plaintiff; that immediately upon the delivery to plaintiff of the hereinbefore described bond, and relying

upon said bond and the security so furnished by said defendants Clark, Clough, and Sunderland, and by each of them, severally, plaintiff commenced to do business with defendant Fowler, and that business relations between plaintiff and defendant Fowler have been continued ever since upon the faith and credit of said bond, and have never been terminated; that after the execution and delivery of said bond the defendant Edwin Fowler became and was indebted to plaintiff in the sum of $1,939" upon certain promissory notes, the dates, amounts, and execution of which are detailed.

A copy of the bond is made a part of the complaint, and it is therein recited "that Edwin Fowler and other ·signers [they being the other defendants] are hereby held and firmly bound, severally and individually unto the White Sewing Machine Company in the sum of $2,000 for value received, to be paid the White Sewing Machine Company.  *. * * The condition of the above obligation is such, that if the above bounden Edwin Fowler, heirs, executors or administrators, shall well and truly pay, or cause to be paid, any and every indebtedness or liability now existing, or which may hereafter in any manner exist, or be incurred on the part of said Edwin Fowler to the White Sewing Machine Company, or its assigns, whether. such indebtedness or liability shall exist in the shape of Book Accounts, Notes or Leases, Renewals or Extension of Notes, Accounts or Leases, Acceptances, Indorsements, Consignments of Property or Merchandise, failure to deliver or account for the same, or any part thereof, or otherwise, and whether such indebtedness shall be incurred under any contract between said White Sewing Machine Company and said Edwin Fowler or otherwise; and whether the same shall arise out of the purchase and sale of Sewing Machines, or otherwise, hereby waiving presentment for payment, protest and notice of protest, and diligence upon all Notes, Accounts or Leases, now or hereafter executed, indorsed, transferred, guaranteed or assigned by the said Edwin Fowler to the White Sewing Machine Company, its agents or assigns, then this obligation to be void, but otherwise to be and remain in full force and effect."  ·'

From an order overruling a demurrer to this complaint, and a judgment in favor of plaintiff, the defendants appeal, and urge that the bond is void under the statute of frauds, because it is a contract of suretyship, and fails to express the consideration. To support this contention, they seem to rely principally upon the authority of *Van Doren* v. *Tjader*, 1 Nev. 384, 90 Am. Dec. 498; but that case is distinguishable from this in two particulars, and a perusal of the opinion on the petition for rehearing indicates that after an examination of conflicting opinions the conclusion was not reached without difficulty and doubt. There the court held that a party does not become liable as a surety by merely writing his name on the back of a promissory note at the time of its execution. Here we may consider whether the words "for value received" are a sufficient expression of the consideration, and whether it may not be fairly implied and reasonably understood from the terms and conditions of the bond that it was executed by the other defendants in consideration of the extension of credit to Fowler on the purchase of sewing machines or otherwise. We think the language employed indicates that such was the intention and purpose of the parties.

Numerous authorities cited in the briefs, and others, hold that the words "for value received" are a sufficient expression of the consideration. (*Day* v. *Elmore*, 4 Wis. 190; *Cheney* v. *Cook*, 7 Wis. 423; *Douglass* v. *Howland*, 24 Wend. 35; *Edelen* v. *Gough*, 5 Gill, 103; *Flowers* v. *Steiner*, 108 Ala. 440, 19 South. 321; *Dahlman* v. *Hammel*, 45 Wis. 466; *Emerson* v. *Aultman*, 69 Md. 125, 14 Atl. 671; *Whitney* v. *Stearns*, 16 Me. 394; *Martin* v. *Hazzard Powder Co.*, 2 Colo. 596; *Osborne* v. *Baker*, 34 Minn. 307, 25 N. W. 606, 57 Am. Rep. 55; Baylies on Sureties & Guaranties, 87; *Siemers* v. *Siemers*, (Minn.) 60 Am. St. Rep. 430, and cases there cited in the note.)

The rules that the surety will be bound if the consideration can be fairly implied from the language of the instrument, and that the extension of credit is a sufficient consideration, are supported by many decisions. (*Eastman* v. *Bennett*, 6 Wis. 232; *Hutton* v. *Padgett*, 26 Md. 228; *Church* v. *Brown*, 21 N. Y. 315; *Young* v. *Brown*, 53 Wis. 333, 10 N. W. 394; *Rigby* v. *Norwood*, 34 Ala. 129; *Highland* v. *Dresser*,

35 Minn. 345, 29 N. W. 55; *Simons* v. *Steele*, 36 N. H. 83; *Bailey* v. *Freeman*, 11 Johns. 221, 6 Am. Dec. 371; Browne on Stat. Frauds, 484–486; 1 Reed on Stat. Frauds, 430; 2 Daniel on Neg. Instmnts. sec. 1767; 3 Parsons on Contracts, 17; annotation, *Siemers* v. *Siemers*, (Minn.) 60 Am. St. Rep. 438, 439; *Violett* v. *Patton*, 5 Cranch, 150, 3 L. Ed. 61.)

The order and judgment of the district court are affirmed.