## ACKERMAN v. HAWKINS ET AL.

[No. 6,942.　Filed June 3, 1909.　Rehearing denied October 14, 1909. Transfer denied March 9, 1910.]

1. FRAUD.—Deeds.—Infants.—Misrepresentations as to Age.—Husband and Wife.—A deed executed by a married woman having the appearance of being, and believed by the grantees to be, more than twenty-one years old, and two subsequent deeds executed by such woman to confirm such former deed, expressly showing that she was twenty-one years old, constitute a fraud upon the grantees, such woman having received and failed to return the consideration received (§§3979, 3980 Burns 1908, §§2944, 2945 R. S. 1881). pp. 490, 494.

2. DEEDS.—Consideration.—Married Woman.—A deed executed by a married woman in consideration of lands conveyed, at her request, to her husband and her father-in-law, upon an agreement by them subsequently to convey certain of such lands to her, is supported by a consideration moving to her. p. 493.

3. MORTGAGES.—Infant Grantors.—A mortgage executed by an infant married woman's grantee, ignorant of her age and believing her to be twenty-one years old, and which grantee received two subsequent ratifying deeds upon an express representation that the grantor was twenty-one years old, is valid and binding, there having been no return of the consideration to such grantee. p. 494.

From Superior Court of Madison County; Ulric Z. Wiley, Special Judge.

Suit by Daisy Z. Ackerman against Etta E. Hawkins and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*A. H. Jones,* for appellant.

*M. M. Bachelder, Ellis & Call* and *Thomas B. Orr,* for appellees.

WATSON, J.—This suit was brought by appellant to set aside two deeds made and executed by appellant and her husband to William H. and Etta E. Hawkins, to set aside a mortgage executed on the real estate by said Hawkins and wife to the Anderson Trust Company, to have the title to said real estate quieted in appellant, and to recover a reasonable rental value of the land during the time appellee Hawkins has been in possession thereof. Judgment on the findings and conclusions of law in favor of appellees.

Appellant has assigned a number of errors, but in the determination of this case it is only necessary to consider the errors assigned in overruling appellant's motion for new trial, viz.: The decision of the court (1) is not sustained by sufficient evidence, and (2) is contrary to law. These assignments call in question the court's rulings upon the two controlling issues in this case: (1) Fraud, and (2) consideration.

The court, among other facts, found the following: "(1) That on October 13, 1902, Daisy Ackerman, plaintiff herein, was a *feme covert,* under the age of twenty-one years; that her husband, John Ackerman, was at the time over the age of twenty-one years." "(5) That on the date mentioned in finding No. 1, herein, plaintiff was the mother of two children. She was above the average height for a woman, and weighed about 200 pounds, and in all respects looked to be over twenty-one years of age, and had had such appearance for two years prior thereto. (6) That prior to October 13, 1902, the plaintiff had secured a conveyance to herself of certain real estate in Madison county, Indiana, which is not

involved in this controversy, which she afterwards conveyed, her husband, John Ackerman, joining her in such conveyance; that she did not purchase said real estate herself, or negotiate for such purchase, but that her father-in-law, Valentine Ackerman, purchased the land and had it conveyed to her, and the court finds that she never had any pecuniary interest in the real estate so purchased by Valentine Ackerman and conveyed to her, and which she afterwards conveyed to a third person; that said two conveyances were duly recorded in the recorder's office of Madison county. (7) That prior to October 13, 1902, plaintiff had borrowed money, secured the payment thereof by a mortgage on her real estate, and afterwards paid off said mortgage; that before said date she had entered into contracts, receipted for money, and received it from the administrator of her mother's estate, and had dealt, in a general way, with different persons as if she were over the age of twenty-one years; that, so far as the evidence shows, prior to said date she had not claimed to anyone that she was under the age of twenty-one years; that she knew herself that she had not yet attained her majority, and she knew that those with whom she had been dealing believed her to be over the age of twenty-one years.'' '' (12) That, pursuant to said negotiations and said written agreement, as before set out in finding No. 9, said William H. Hawkins, Valentine Ackerman and J. B. Kinney met in the town of Frankton, on October 13, 1902, for the purpose of exchanging deeds to said real estate; that on said day William H. Hawkins, for the first time, was informed that the forty-eight acres of land in controversy, and which was mentioned in said contract, was owned by plaintiff, and that thereupon he demanded that she and her husband join in a deed to said real estate; that said John Ackerman went to his home from Frankton, where said parties had met to exchange said deeds, brought his wife to town, and she and her said husband then and there executed and delivered to William H. Hawkins and Etta E.

Hawkins, his wife, a deed of general warranty, conveying to them the land in controversy, which is as follows.'' '' (14) At the same time said William H. Hawkins executed and delivered to Valentine Ackerman and his son, in accordance with the terms of said written agreement aforesaid, a deed of general warranty, conveying to said Valentine Ackerman and his son the several tracts of land in Mississippi, which are specifically described in the contract between said Ackerman and son and William H. Hawkins, as appears in finding No. 9.'' '' (16) That after the execution and exchange of said deeds, and after the recordation of the deed from plaintiff and her husband to Hawkins and Hawkins, said William H. Hawkins obtained information that there was some question as to whether the plaintiff, at the time she executed said deed, was twenty-one years of age; that he immediately made an investigation as to her age, and sent to the town of Frankton and informed Valentine Ackerman that he had heard that some people were claiming that plaintiff was not of age at the time she executed said deed, and stated to Valentine Ackerman that he wanted a good deed; that they had his property and he had theirs, and that if he could not get a good deed he wanted to return the property and have his returned to him. He was informed by said Valentine Ackerman that the plaintiff was of age at the time of the execution of said deed, but if there was any doubt about it she would be of age on December 28, 1902; that, relying upon said representations, defendant Hawkins had another deed prepared and forwarded to J. M. Farlow, a notary public at the town of Frankton, Indiana, for the purpose of having said plaintiff and her husband execute an additional deed after December 28, 1902, which said deed is in the words and figures following.'' '' (21) The court further finds that plaintiff knew that the grantees named by William H. Hawkins in the deed to the Mississippi land were Valentine Ackerman and son; that Valentine Ackerman was plaintiff's father-in-law, and that the word 'son,' representing

one of the grantees in said deed, meant plaintiff's husband, John Ackerman." "(24) The court further finds that on October 13, 1902, when William H. Hawkins deeded to Valentine Ackerman and son the Mississippi land, and when plaintiff and her husband conveyed to William H. Hawkins the land in controversy, both of said deeds, before they were executed, were read over in the presence and hearing of plaintiff, and that she knew that the Mississippi land was conveyed to Valentine Ackerman and her husband, and she did not at the time make any complaint thereof, but, on the contrary, assented thereto. (25) The court further finds that when said deed for the Mississippi land was executed to Valentine Ackerman and son there was an agreement and understanding between Valentine Ackerman, Daisy Ackerman, and her husband, John Ackerman, that, when they went to Mississippi to take possession of the land, a sufficient number of acres of said Mississippi land should be conveyed to plaintiff, which should equal in value the real estate she had conveyed to Hawkins and Hawkins, and that she should have said land conveyed to her as a consideration for the real estate which she had conveyed to Hawkins and Hawkins in exchange for the Mississippi land; that by such agreement and understanding the plaintiff was to have conveyed to her 400 acres of the Mississippi land upon which there was situate a white dwelling-house. (25½) The court further finds that the 400 acres of land in Mississippi, which it was agreed should be conveyed to plaintiff on the arrival of the two families there, was equal, or approximately equal, to the land which plaintiff conveyed to Hawkins and Hawkins. (26) The court further finds that, within a few days after the execution of the third deed by plaintiff and her husband to William H. Hawkins, Valentine Ackerman and wife and plaintiff and her husband removed to the State of Mississippi for the purpose of taking possession of the real estate which had been conveyed to Valentine Ackerman and son; that they took their household goods, and took posses-

sion of said real estate. (27) The court further finds that within a short time after their arrival in the State of Mississippi, and while living on said land, plaintiff demanded of Valentine Ackerman and her husband, John Ackerman, that they set off to her her portion of said real estate, being 400 acres, in consideration of her having deeded the land in controversy as a part of the consideration for the exchange of said Mississippi land, and that thereupon such demand and request were refused by said Valentine Ackerman; that he, at that time, informed plaintiff that there was no real estate there for her; that plaintiff took no legal or equitable action in reference to said real estate for the purpose of securing whatever right she had therein, but when said Valentine Ackerman refused to convey to her any portion thereof she returned to Indiana; that shortly thereafter her husband, John Ackerman, and Valentine Ackerman executed to Ann M. Ackerman, the wife of Valentine Ackerman, a deed of general warranty, conveying to said Ann M. Ackerman all of said real estate in Mississippi; that at said time John Ackerman was indebted to Ann M. Ackerman in the sum of $600, which indebtedness, by agreement between John Ackerman and Ann M. Ackerman, was canceled by conveyance of said real estate to her. (27½) The court further finds that John Ackerman had no interest, either legal or equitable, in said Mississippi land.''

''(29.) The court further finds that plaintiff, together with her husband and Ann M. Ackerman, her mother-in-law, executed to the Anderson Loan Association a mortgage on the real estate referred to in finding No. 6, to secure the payment of $1,200, which mortgage was executed on October 23, 1900; that on September 18, 1902, her husband joining her, plaintiff executed another mortgage to Ann M. Ackerman to secure the payment of $600 on said last-mentioned tract of land, and that both of said mortgages had, prior to October 13, 1902, been released of record and satisfied, all of which

fully appeared upon the records of Madison county, Indiana."

"(35)  The court further finds that soon after the conveyance of the real estate in controversy to William H. Hawkins and Etta E. Hawkins they took possession thereof and have held continuous possession up to the present time, and that the rental value of said real estate is and has been $175 per annum.  (36) The court further finds that, since the execution of the several deeds hereinbefore found, plaintiff has lived peaceably and happily with her husband John Ackerman, and that during all said time she has been on friendly terms with and visited the family of Valentine Ackerman.  (37) The court further finds that on October 13, 1902, when the plaintiff executed the first deed to said real estate, on December 29, 1902, when she executed the second deed, and on December 31, 1902, when she executed the third deed, she knew that she was not twenty-one years old.  (38) The court further finds that on December 29, 1902, when the plaintiff executed the second deed, which contained the following statement: 'This deed is executed for the purpose of confirming and ratifying a deed executed by the grantors herein to the grantees herein on October 13, 1902, the grantor herein, Daisy Ackerman, being at the time of the execution of said former deed a minor under the age of twenty-one years, and she being now over twenty-one years of age,' she fully understood the meaning and purport of said statement, and made it for the purpose of misleading and defrauding said Hawkins and Hawkins; that said statement in said deed was false and fraudulent, and constituted a fraud upon them.  (39) The court further finds that said Hawkins and Hawkins believed said statement and relied upon it, and if plaintiff had not executed a second deed, and subsequently a third deed, after she had made said statement, they would not have accepted said conveyance, and would have proceeded at law to recover the real estate in Mississippi

which they had conveyed to Valentine Ackerman and his
son with the knowledge and consent of plaintiff, in consid-
eration of the conveyance to them of the real estate owned
by Valentine Ackerman and that owned by the plaintiff, the
latter being the land in controversy.   (40) The court fur-
ther finds, from the facts herein stated, that plaintiff fully
knew and understood that the deed to the Mississippi land
was made to Valentine Ackerman and son, and that she was
to have an interest in said land equal to the value of the real
estate in controversy, which was a part of the consideration
for the exchange of said lands between said parties, and that
she did, in fact, receive such consideration.''

The special findings show that the plaintiff was a *feme
covert*, under the age of twenty-one years on October 13,
1902, the date of the execution of the first deed, on
December 29, 1902, the date of the execution of the
second deed, and on December 31, 1902, the date of
the execution of the third deed; that she knew she was not
of age at the time she executed said deeds, for, upon her own
testimony, she was born September 24, 1883; that she knew
that Hawkins and Hawkins believed and were relying upon
the assurance that she was twenty-one years old when the
second and third deeds were executed; that the express pur-
pose of these last two deeds was to ratify the first deed of
October 13, 1902, which William H. Hawkins, upon inquiry,
found was given before plaintiff was of age.   The second
deed expressly stated the purpose for which it was executed,
to wit:

''This deed is executed for the purpose of confirming
and ratifying a deed executed by the grantors to the
grantees on October 13, 1902, the grantor Daisy Acker-
man being at the time of the execution of said former
deed a minor under the age of twenty-one years, and
she being now over twenty-one years of age.''

This deed was read to plaintiff, and, after being told by the
notary that if she was twenty-one years old she should sign

it, but if not she should not sign it, she did sign it, knowing full well that the statement therein regarding her age was untrue.

The special findings disclose that John Ackerman and appellant were intermarried on April 23, 1899, and lived together as husband and wife, and were so living at the time of the commencement of this suit; that at the time the first deed was executed, to wit, October 12, 1902, John Ackerman, husband of appellant, was over twenty-one years of age; that appellant on January 12, 1905, disaffirmed said deed, and demanded that the real estate so conveyed by her and her husband be reconveyed to her, but she did not return or offer to return the consideration, or any part thereof, which she received for the real estate so conveyed by her and her husband, and which is the subject of this controversy. The execution of this last deed was a palpable fraud. Appellant signed it, knowing the purpose for which it was executed, and that appellee Hawkins was relying upon the untruth, recited therein, that she was twenty-one years of age. While the misapprehension on the part of said appellee, that she was to become of age on December 28, was due to a statement made to him by a third party, her own statement, that since executing the first deed she had become of age, as set out in the deed, in all respects confirmed it, and was either a participation in a fraud that had already been committed or was itself the perpetration of one.

All three of the deeds were delivered to Hawkins, but only the first and third were recorded. The second deed, although not one of the deeds sought to be set aside by this action, is a material link in the transaction, in that it contains a positive assertion by appellant that she had become twenty-one years of age. Hawkins believed this representation and relied upon it, and would not have accepted the conveyance had appellant refused to assent to that part in the deed pertaining to her age; neither would there have been a third

deed executed. Hawkins in no way took advantage of appellant. His dealings with her, although negotiated and transacted largely through her husband and father-in-law, were open and above suspicion. He acted throughout, as shown by the special findings and the evidence, in the utmost good faith and confidence, believing that he was being dealt with fairly and honestly. The evidence shows that prior to this transaction appellant had had dealings with various persons who, judging from her size and appearance, believed her to be twenty-one years of age. Sections 3979, 3980 Burns 1908, §§2944, 2945 R. S. 1881, are as follows: ''§3979. In all sales by an infant *feme covert* of lands belonging to her, and in which sale and conveyance her husband has joined, he being of full age, said infant shall not be permitted to disaffirm said sale until she shall first restore to the person owning said real estate the consideration she received for said land: Provided, however, that if she will allege in her complaint that she received no consideration for said sale, an issue may be made upon such allegation; and if, upon trial, the court or jury find that any consideration was received by her, the court shall, in the finding and decree, declare such amount so found first lien against said land in favor of the defendant. §3980. In all sales of real estate by an infant he or she shall not be permitted to disaffirm said sale without first restoring to the person owning the property sold the consideration received in said sale, if said infant falsely represented himself or herself to said purchaser to be over the age of twenty-one years, and the party buying from said infant acted in good faith, and relied upon said representations in such sale, and had good cause to believe said infant of full age.''

In the case of *United States Sav., etc., Co.* v. *Harris* (1895), 142 Ind. 226, 240, a case under this statute, the court said: ''It is very evident that the purpose of the act was to provide a remedy against the known evil arising out of the legal right of minors, who have actually reached the

estate of manhood and womanhood, to disaffirm their contracts in relation to their real estate, and at the same time retain the consideration received. It was not the purpose or intent to take away any of the protection that minority throws around infants of tender years. But it was the intent of the first section to take away some of the privileges the law of infancy throws around female minors, who are old enough to enter into and become bound by the most important civil contract that can be made by woman or man, and who have entered into such contract by marrying men over twenty-one years of age. The second section was evidently intended to take away some of the legal privileges from minors, both male and female, who have so nearly reached the estate of manhood and womanhood, that they might honestly be taken for persons of full age by those dealing with them, and who in dealing with such, concerning their real estate falsely represented themselves to be over twenty-one years of age. The general object of both sections, evidently, was to prevent minors of both classes from using the shield of minority as a sword, to prevent them from perpetrating deeds of rascality and villainy by means of their minority.''

If it be true, as contended by appellant, that no consideration whatever was received by her, this is not a proper case for the application of the statute. William H. Hawkins conveyed to Valentine Ackerman and son 1,183 acres of land in the State of Mississippi, in lieu of the forty-eight acres owned by appellant and certain lots in the town of Frankton owned by Valentine Ackerman. Appellant knew that the deed was made to Valentine Ackerman and son, and assented thereto, understanding that the purpose of its being so made was that her portion of the land conveyed by said deed of Hawkins and wife might be partitioned between the parties after she and her husband had seen the land and decided which part would be most desirable.

The consideration moved from Hawkins to Valentine Acker-man and son, with an express agreement between the grantees and appellant as to the disposition thereof. Appellant, then, cannot be heard to say that no consideration was ever received by her. *Crawford* v. *Shaw* (1862), 18 Ind. 495; *Law* v. *Smith* (1904), 68 N. J. Eq. 81, 59 Atl. 327; *White Sewing Mach. Co.* v. *Fowler* (1904), 28 Nev. 94, 78 Pac. 1034; *First Nat. Bank* v. *Lang* (1905), 94 Minn. 261, 102 N. W. 700; *Chambers* v. *McLean* (1904), 24 Pa. Super. Ct. 567. Although at the time the deed from William H. and Etta E. Hawkins was executed, appellant gave no directions concerning whom it should name as grantees, the purpose and expediency of the deed were explained and subsequently acquiesced in by her as executed. The evidence does not sustain the allegation that appellant was coerced by her husband or anyone else into signing any of the three deeds, and the special findings so find.

The appellant earnestly insists that the special findings are not warranted by the evidence. We have examined the record and find that the evidence and the legitimate inferences to be drawn therefrom fully sustain every essential finding by the trial court upon which the conclusions of law are based.

The case properly comes within the statute before quoted. The appellant having failed to return, or offer to return, to appellee Hawkins the consideration so received for her land, she will not be permitted to come into a court of equity and repudiate her contract, without doing equity, as provided by the statute.

It is shown that the Anderson Trust Company had no knowledge of appellant's age, but relied upon an examination of the records. What we have said as to the deed by appellant to Hawkins and wife is equally applicable to the trust company's mortgage. The deed being valid and binding, it follows that the mortgage is also a valid lien on said real estate.

The trial court correctly stated the conclusions of law upon the facts found. We find no error for which this cause should be reversed.

Judgment affirmed.