## PAUL STEAM SYSTEM CO. v. PAUL.

(Circuit Court, D. Massachusetts. April 20, 1904.)

No. 1,759.

1. CORPORATIONS—NOTICE—KNOWLEDGE OF OFFICERS.

A corporation, having the right under a contract to purchase and own patents which should be granted to an inventor, if it should elect to do so before applications therefor were filed, and should pay the costs of obtaining the same, was charged with notice which required it to make such election where its president and some of its directors had knowledge that applications were to be filed by the inventor; and it was not necessary that its board of directors, as a body, should be given notice of the fact.

2. PATENTS—CONTRACT GIVING RIGHT TO PURCHASE—ABANDONMENT.

Where a corporation, having the right under a contract to purchase and own patents which might be .granted to an inventor for a certain class of inventions, if it should so elect before applications were filed for such patents, and should pay the cost of obtaining the same—otherwise the inventor to have the right to obtain them in his own name and for his own benefit—made its election as to certain patents, and paid the preliminary fees, but afterwards advisedly failed to pay the final fees, such failure operated as an abandonment of its election, and left the inventor free to take the patents for his own benefit.

3. PRELIMINARY INJUNCTION—SUFFICIENCY OF GROUNDS.

It is the practice of the federal courts to refuse an injunction pendente lite unless the case shows beyond reasonable question the necessity for such intervention.

In Equity.

Coolidge & Hight and Ernest Howard Hunter, for complainant.

Kenyon & Kenyon, for defendant.

HALE, District Judge. This is a suit in equity brought by the complainant to compel the defendant to assign to it United States letters patent No. 604,335, No. 647,023, and No. 647,024, all of said letters patent having been granted to the defendant; also to assign to the complainant an application for United States letters patent No. 16,808, filed by said defendant in the Patent Office May 15, 1900, and now pending there.

The case is now before the court upon a motion for a preliminary injunction to restrain the defendant from assigning the patents and the application named in the bill of complaint, and from constructing, using, or selling any of the improvements described therein. The bill alleges that prior to October 5, 1894, the defendant and one William P. Skiffington were owners of certain inventions and improvements relating to steam systems and devices for removing the water of condensation from the cylinders of paper drying machines, and of certain other inventions relating to the same subject, and that, being in possession of these patents and inventions, they caused the complainant corporation to be incorporated for the purpose of acquiring all their interest in the said patents and inventions; that on October 5, 1894, an agreement in writing was entered into by the

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 1748, 1754.

complainant corporation with the defendant and with said William P. Skiffington, whereby the complainant corporation acquired all the interest of the defendant and of Skiffington in the inventions relating to said subject. This agreement is made a part of the bill, and sets out that the defendant and said Skiffington, parties of the first part, are the owners of certain inventions relating to steam heating systems and devices for removing the water of condensation from the cylinders of paper drying machines. The agreement enumerates the patents, and sets out further that the said defendant "owns or controls certain other inventions relating to steam heating systems, for which no applications have yet been prepared." The agreement provides in the first clause that Paul and Skiffington agree to assign and transfer to the company "the entire right, title and interest in and to the above-recited inventions, applications and letters patent, including all the inventions in steam heating systems and devices for removing the water of condensation from the cylinders of paper drying machines heretofore made and contemplated by the said Andrew G. Paul." The agreement further provides for the payment in cash and stock, and makes other provisions, which for the purposes of this case it is unnecessary to enumerate. The fourth clause of the agreement is as follows:

"Fourth. The said Andrew G. Paul agrees that if he shall make any further improvement or improvements on the above-mentioned inventions while he is in the employment of the party of the second part or during a period of two years, after the termination of such employment, the party of the second part shall have the option to purchase or own the said improvement or improvements and patent or patents that may be granted therefor, both in the United States and in foreign countries, the said party of the second part to pay in consideration for said improvement or improvements and patent or patents merely the expenses connected with the securing of said United States and foreign patents. It is understood and agreed that the said party of the second part shall elect whether it shall purchase the said improvement or improvements referred to in this clause and the United States and foreign patents for the same before any application for a patent has been filed for said improvement or improvements in the United States or any foreign country; and if prior to the filing of any such application in the United States or any foreign country the party of the second part shall not elect to purchase and own the said improvement or improvements, then the said Andrew G. Paul shall retain title to the said improvement or improvements free and clear of any claim thereto on the part of the party of the second part, and shall have the right to apply for and obtain in his own name and for his own benefit a patent or patents for any such improvement or improvements both in the United States and foreign countries."

It appears further from the bill and from the testimony in the case that prior to May 1, 1903, the defendant made certain improvements on the inventions referred to in the agreement, and particularly improvements described in letters patent Nos. 604,335, 647,023, and 647,024, and in an application for a patent filed by the defendant May 15, 1900, No. 16,808, and that he now holds for his own use and in his own name the said letters patent and the said application for letters patent.

The bill further alleges that the complainant fears that defendant will transfer the letters patent and the application to a third person, and will cause the complainant irreparable damage, and asks, among other things, for a temporary injunction restraining the defendant

from assigning the patents and the application, and from constructing, using, or selling any of the inventions. It will be seen by an examination of the fourth clause of the agreement, upon which the suit is brought, that the defendant agreed that if he should make any further improvement on the inventions enumerated in the agreement, while he is in the employment of the company, or during a period of two years after the termination of such employment, the company should have the option to purchase said improvement, and the patent or patents that may be granted therefor, the company paying "in consideration for said improvement or improvements and patent or patents merely the expenses connected with the securing of said United States and foreign patents." The testimony shows that the improvements and the application concerning which relief is sought were made during the time set forth in the fourth clause.

The defendant in this suit makes the contention that the claim of the complainant to the patents and the application enumerated cannot be sustained, for two reasons: First, because the inventions claimed in said patents and in said application are not improvements upon the inventions assigned to the complainant company in the contract in suit; and, second, because the complainant company, having full notice of the inventions and of the defendant's intention to file the application, did not elect to own the inventions, as it was bound to do under the terms of the fourth clause of the contract of 1894. Much testimony is offered on the questions of law and fact arising under the first contention, and very able and ample arguments have been submitted on both sides on these questions. The court prefers, however, to address itself first to the consideration of the second contention raised by the defendant, namely, did the complainant company have full notice of the inventions set forth in said patents and in said application, and did the said company have full notice of the defendant's intention to file said application, and, having such notice of the inventions and of the defendant's intention to file the application, did the complainant company elect to purchase the improvements enumerated in said patents and in said application under the terms of said contract? Under this second contention, for the purposes of the case, we may assume the admission that the inventions were "improvements," within the meaning of the contract.

Upon this motion for a temporary injunction, it is incumbent upon the complainant, before it can be entitled to the relief sought, to show that it did exercise its right of election. The testimony with reference to the first two patents enumerated in the bill is different from the testimony on this point in relation to the last-named patent and to the application No. 16,808. With regard to the last-named patent and the application, the testimony fails to satisfy the court that the complainant, after having full notice, did elect to purchase the improvements to which this patent and this application relate. In reference to the application the testimony on this subject is very ample. The testimony of the defendant and of several directors is distinct that the complainant did have full notice that the patent was to be applied for, but the testimony does not satisfy us that they elected to purchase the improvement named in the application. In this peti-

tion for a temporary injunction the court does not consider it necessary or advisable to discuss the testimony in detail. It is sufficient to say that the complainant has not, on this point, met the requirements of the law with reference to showing a clear case for the relief sought. The defendant and his witnesses have clearly shown that the president and certain of the directors of the corporation knew of the fact that an application for a patent was to be made. The point is taken by the complainant that this notice, in order to be conclusive, must have been brought home to the directors of the company in a meeting, and must have been acted upon in a formal way, and must be shown of record. We do not think so. Notice to the acting officers, or to some of them, was sufficient. Corporations act by agents. The whole scope of corporation law is defined on principles of agency. We think that, under the decisions of this court, a notice of this sort, if brought home to some acting officer or agent of the corporation, is sufficient. The testimony upon this point with regard to patent No. 647,024 is of a similar character to that in regard to the application No. 16,808. The court finds that the corporation did not elect to purchase the improvement contained in this patent.

With regard to patents No. 604,335 and No. 647,023 a different state of facts exists. The corporation did elect to own these patents, and did pay for the filing of the applications and for the preliminary work of getting the patents, but failed to pay the final fees. These fees were paid by the defendant, he taking the patents in his own name. While a more difficult question arises in regard to these patents, we think that in regard to them the complainant has not shown a right to the remedy sought upon this motion. The testimony indicates that the complainant corporation acted advisedly in regard to discontinuing their payments, and concluded not to carry out their election, and not to receive and take the patents in their own name. They do not, then, prove a right to the patents under the agreement.

When all the testimony is taken, and the cause comes before the court for a final hearing, it may be that the examination and cross-examination of witnesses may present the case in a new light. The practice in the federal courts, and especially in this circuit, is to refuse an injunction pendente lite unless the case shows beyond reasonable question the necessity for such intervention of the court. The practice of this circuit has been, except in clear cases of necessity, to leave a cause untrammeled by injunctions or decretal orders until the final hearing.

The court is of the opinion in the case at bar that it is its duty to deny the temporary injunction restraining the defendant from assigning the patents and the application, and from constructing, using, or selling the described inventions. The motion for temporary injunction is denied.