ALFRED W. LAW, executor,

*v.*

CATHARINE J. SMITH.

[Decided December 1st, 1904.]

1. A court of equity has jurisdiction to enforce a contract for the sale of a bond and mortgage, on bill filed by the holder.

2. Complainant advanced money to a corporation and received a mortgage therefor. Defendant executed an agreement to complainant, stipulating that she would purchase the mortgage at its maturity, provided complainant would then tender an assignment thereof to defendant, or notify defendant of the desire to assign; and the agreement closed with the recital that, for the purpose of inducing complainant to loan the money and take this guarantee, defendant stated that she was worth $10,000 in real estate.—*Held,* on defendant's failure to purchase, that if defendant be regarded as surety it was not necessary that complainant first resort to the mortgage, but he might maintain a bill for specific enforcement of the contract of sale of the mortgage.

3. The transactions were in New York, and the property was located there, and defendant's contract was to be delivered there, and was not enforceable until delivered.—*Held,* that though defendant, a married woman, resided in New Jersey, it was a New York contract and subject to the New York statute permitting married women to contract as though single, and making her separate estate liable for such contracts.

4. Such contract by a married woman, being valid in New York, where made, a court of chancery of New Jersey will not refuse to enforce it.

5. As complainant's right to payment became vested on the day the contract matured, and she frequently made demand, and there was no change in the character or quality of the subject-matter, her suit for performance was not barred by nearly four years' delay.

On bill for specific performance. Final hearing on bill, answer and proofs.

*Mr. Charles L. Carrick,* for the complainant.

*Mr. Robert S. Hudspeth,* for the defendant.

PITNEY, V. C.

This is a suit for specific performance. It is brought by the complainant, Alfred W. Law, as executor of his deceased wife, Alice M. Law, against Catharine J. Smith, the wife of William E. Smith.

The subject-matter of the suit is a bond and mortgage for $5,000 given by the New York Milk Products Company, a New York corporation, to the testatrix, dated November 18th, 1896, payable in three years, and covering several separate pieces of property in the western part of the State of New York.

The defendant's husband was the president of the corporation mortgagor.

At the time of the delivery of the mortgage the defendant entered into a written contract with the testatrix, as follows:

"For and in consideration of the loaning of the sum of five thousand dollars ($5,000) by Alice M. Law to the New York Milk Products Company, I hereby agree to and with the said Alice M. Law that I will purchase the bond and mortgage bearing date the 18th day of November, 1896, given by the New York Milk Products Company to the said Alice M. Law to secure the payment of said sum of five thousand dollars ($5,000) on the 18th day of November, 1899, at its maturity, provided the said Alice M. Law shall at that time tender to me or my legal representatives an assignment of said bond and mortgage, or notify me in writing by mail that she is ready and desirous to assign the said mortgage to me, and for the purpose of inducing her to loan said money and take this guarantee I hereby state that I am worth ten thousand dollars ($10,000) at the present time, consisting of real estate in the county of Middlesex, State of New Jersey.

"CATHARINE J. SMITH."

A reasonable time before the maturity of the mortgage and contract the defendant was duly notified that the money would be required at the time named. In anticipation of the fulfillment of the contract by the defendant a duly and properly executed assignment of the mortgage from the testatrix to the defendant was executed by the testatrix and placed in the hands of her counsel, Mr. Parmly, and he had it at his office ready for delivery, and the defendant was duly notified thereof by registered letter, the receipt whereof she acknowledged on the stand.

Complainant lived in New York City; the mortgagor was a New York corporation; the money was loaned in New York City, and the transaction was emphatically a New York transaction.

The defendant's residence was at South Plainfield, New Jersey.

Several defences were set up.

First, that this court has no jurisdiction, or, at least, ought not to exercise it in this case, for the reason that he has a complete and adequate remedy at law.

This defence is presented in two aspects.

First, that the court ought not, except in very exceptional cases, take cognizance of a suit for the specific performance of a contract for the purchase and sale of personal property.

The jurisdiction of the court to enforce a contract for the purchase or sale of personal property is too well settled to be doubted. The question, from the point of view of judicial authority, was dealt with exhaustively by Chancellor Runyon in *Cutting* v. *Dana,* *25 N. J. Eq. (10 C. E. Gr.) 265.* That was a bill filed by a purchaser against the seller of choses in action, consisting of liquidated claims, against an insolvent debtor.

The contract was enforced after an elaborate examination of the ancient authorities. The principal difference between that case and this is in the attitude of the parties. This is a suit by seller against purchaser.

*Cutting* v. *Dana* was followed by me in *Rothholz* v. *Schwartz,* *46 N. J. Eq. (1 Dick.) 477,* and, again, in *Duffy* v. *Kelly,* *55 N. J. Eq. (10 Dick.), 627.* I refer, without repeating, to the authorities cited by me in *46 N. J. Eq. (1 Dick.),* at *p. 481.*

*Gannon* v. *Toole,* *32 Atl. Rep. 702,* was a case like this, of vendor against vendee, as was also *Rothholz* v. *Schwartz, supra.*

The other branch of this defence is that the proper remedy is at law, either—*first,* in the shape of a suit for the whole purchase-money; or *second,* a suit to recover the amount, if anything, which may remain due after the complainant has exhausted his remedy on the mortgage by foreclosure.

The remedy by a suit at law to recover the whole purchase-money based on a contract and a tender of a conveyance, is the

old answer set up to any suit for specific performance in equity by vendor against vendee. It has long since been abandoned.

The difficulties in the way of using it are manifest. The vendor plaintiff at law ought not to be compelled to part with his title until he has received the purchase-price. If he obtain a judgment for the whole price, he ought not to be permitted to collect the money from the defendant by execution thereon until the title is vested in the other. Here comes in the convenience, if not the necessity, for the machinery of this court. The parties meet in a master's office and the decree is performed under his supervision.

Then with regard to the other suggestion, viz., that the remedy on the mortgage should be first exhausted by foreclosure, is based on the notion that the defendant stands in the position of a surety for the corporation debtor, and that it is the duty of complainant to exhaust his remedy against the debtor before proceeding against the surety. I do not understand such to be the law of the land. It was said by Chancellor Green, in the brief but comprehensive statement of the law on this subject, found in his opinion in *Irick* v. *Black, 17 N. J. Eq. (2 C. E. Gr.) 189* (at *p. 195*), that the surety "may in special cases compel the creditor to resort to securities in his hands before coming upon the surety.

"And, although the creditor will not, as a matter of course, be restrained from enforcing his rights against the surety till his remedies against the principal are exhausted, yet when the creditor is fully indemnified, where he is subjected to no delay and exposed to no risk of loss, he will be compelled to resort, first, to the property of the principal in satisfaction of his claim. If the court is asked to interfere on behalf of the surety before judgment is recovered against him, he must present some special ground of equitable relief."

This doctrine is reiterated by the late Justice Depue, in the case of *Philadelphia and Reading Railroad Co.* v. *Little, 41 N. N. J. Eq. (14 Stew.) 519* (at *p. 529*). But those are mere *dicta* and statements of a general principle that in all cases the court will examine, consider and weigh all the equitable influences which ought to operate on its mind.

The general rule, undoubtedly, is that the creditor may resort, in the first instance, to the surety, if there be nothing inequitable in his so doing. It is the duty of the surety, in ordinary cases, to pay the debt and himself proceed against the principal debtor. Upon such payment he is entitled, independent of any special contract, to the benefit of any collaterals which the creditor may hold.

In this case it seems to be quite manifest, from all the circumstances and the language and frame of the contract, that the parties contemplated a payment, in the first instance, of the whole money by the defendant, and that they did not contemplate the resort, in the first instance, to the enforcement of the mortgage. The very form of the contract itself, viz., an agreement to purchase the mortgage, seems to prove this most conclusively.

I am by no means sure that the enforcement of the mortgage would not be a waiver of all rights against the defendant under the contract.

For I am not able to see how the complainant could assign and transfer to the defendant a mortgage which had been extinguished, so to speak, by foreclosure; or, in other words, how the assignment of the mortgage, which had been in a sense extinguished by foreclosure, would be such a fulfillment by complainant of the contract on his part as would entitle him to recover against the defendant.

Besides, I think the point is well taken by complainant's counsel that it would be manifestly unfair to compel complainant to incur the expense and trouble of a foreclosure and the risk of bidding upon property, the value of which is uncertain, and then, in order to protect himself, be obliged to choose between the security of the property and the security of the defendant's obligation.

On this part of the case I think complainant is entitled to the aid of this court.

Several other objections are made, among them want of consideration and want of mutuality.

I can see no substance in either of them. A full consideration moved from complainant's testatrix, not, indeed, to the defend-

ant, but that is unnecessary. The money was advanced to a third party on the strength—*first,* of the mortgage, and *second,* of the defendant's agreement to purchase at maturity.

That makes the contract binding on the defendant, and when the mortgage shall be assigned to her she will receive full consideration. All hardship is removed by the evidence of her husband that the mortgaged property is ample to pay the debt.

With regard to want of mutuality, the offer of the complainant, at the time named, to make the assignment, removed that objection, if it ever existed. But, in my judgment, it never did exist.

The case is far outside of that very narrow class of mere options which the courts have held to be unenforceable for want of mutuality. Wherever anything passes from the one party to the other, or to that other's nominee, at the time of the contract which forms a consideration for it, the element of mutuality exists, and the contract ceases to be classed as unilateral.

One other matter is set up in defence which I will notice here. It is said, and proof tending to support the allegation is offered, that the corporation gave to the complainant's testatrix, as further security for the payment of the money loaned, a chattel mortgage on certain chattels found on the mortgaged premises, and that the testatrix failed to file said chattel mortgage, so that it became void, and the defendant has lost the benefit of it. It was claimed by counsel for complainant that such was not the effect of the statute of New York, and that the chattel mortgage became void as against creditors only, and no proof was offered that any creditors had intervened.

No proof was offered as to the laws of New York on this subject and the parties, at the close of the case, entered into this stipulation:

"It is further agreed that the defendant may present the record of certain chattel mortgages or mortgage in New York State by the Milk Company to Mrs. Law as additional security for the debt stated in the pleadings, and certified copy of the mortgage may be offered in evidence hereafter; also a reference to the statute of New York governing chattel mortgages, and the decisions of the courts of that state on the subject. It will be used by the court to ascertain what the law of the State of New York is on that subject."

Nothing has been done by defendant under this stipulation, and the case stands as it was left at the hearing.

Against the position of the defendant, however, the complainant cites the case of *Stephens* v. *Meriden Britannia Co., 160 N. Y. 178*, the first headnote of which is as follows: "While a chattel mortgage, which was neither filed, as required by law, nor accompanied by an immediate delivery, followed by an actual and continued change of possession of the property mortgaged, is void as against judgment creditors of the mortgagor, it is good as between the parties thereto and as against creditors at large."

Complainant also cites the case of *Sheldon* v. *Wickham, 161 N. Y. 500*, the headnote of which is as follows: "An assignee for the benefit of creditors cannot, in an action to foreclose a mortgage, covering both real and personal property, executed by the assignor prior to the assignment, when there is no claim of fraud in the transaction, avail himself of the defence that the mortgage is void as to the personal property because not filed as a mortgage of chattels, as an unfiled chattel mortgage cannot be treated as a transfer of property in fraud of the rights of creditors, and therefore does not fall within chapter 314 of the laws of 1858, permitting assignees to disaffirm and treat as void transfers in 'fraud' of the rights of creditors, without having such claims established by a judgment."

As before remarked, there is no allegation or proof in this case that any creditor has actually attacked or is in a position to attack the chattel mortgage in this case. So far as appears it was, at the maturity of the principal mortgage, and still is, a valid instrument. It is not even necessary to consider what would have been the result if it were valid on November 18th, 1899, and had become invalid since, nor what is the effect of the non-action of the complainant's testatrix, being the result of the request of defendant's husband not to file it, or of its being an additional security not within the scope of the contract here in question.

One other matter may be noted before coming to the real defence.

It is said that the contract was entered into for a mere temporary purpose, viz., to guarantee complainant's testatrix against

certain apparent but removable objections to the title of the premises proposed to be mortgaged, and those objections to the title were afterwards fully removed. Some parol evidence was offered, subject to objection, in support of that theory.

I think the evidence fails to support it. Moreover, it is clearly entirely inconsistent with the verbiage of the contract itself and with the actual circumstances of the case.

The application for the loan of $5,000 was made by the treasurer of the corporation, a Mr. Fear, a personal friend of the complainant, and who had his confidence. After the verbal contract to make the loan had been made, or was expected to be made, and while the title was being searched and freed from apparent defects, the corporation being pressed for money, Mr. Fear induced complainant's testatrix to make some temporary advances upon his promise to take care of the testatrix, so that in fact about $2,500 was advanced before the mortgage and contract were executed, and so the defendant contends that the whole $5,000 was not advanced on the strength of this mortgage and contract. But the evidence makes it quite clear that there is nothing in this contention.

Until the mortgage was executed and delivered the $2,500 previously advanced assumed the shape of a loan, payable on demand, and the accepting for it of a mortgage payable in three years changed its character and postponed its payment accordingly. As temporary security the corporation, under date of September 16th, 1896, adopted the following resolution:

"Whereas, Mr. Law has advanced to this company two sums of five hundred dollars each, making together one thousand dollars, in anticipation of the pending negotiations for the loan to the company of five thousand dollars, which is still under legal examination as to titles, &c., and it is hereby resolved that in case the loan on bond and mortgage should not go through, or fail to be accepted, that the company hereby agree and resolve to protect Mr. Law in the matter of his advance of one thousand dollars to the extent of making him a first and preferred creditor for that amount in case of any trouble arising."

The other $1,500, making up the sum of $2,500 advanced before the date of the mortgage, was undoubtedly advanced under the same understanding.

The result is that in law the case stands precisely as if, the $2,500 advanced prior to the execution of the mortgage had been in fact advanced at the date of that instrument.

The remaining $2,500 was paid after the delivery and recording of the mortgage—$2,000 shortly afterwards and $500 three or four months after.

This brings up the principal defence, viz., that the contract on the part of the defendant, who was a married woman, residing in New Jersey, was in substance and effect a contract of suretyship, and therefore forbidden by our statute.

But it was also clearly a New York transaction, from start to finish. The testatrix was a resident of New York City, the subject-matter—the bond and mortgage—was made by a corporation of the State of New York, executed in the city of New York, and covered property situate in that state. The consideration, $5,000, was all paid in the State of New York. The contract here to be enforced was delivered in the State of New York, and had no binding force or effect until it was so delivered.

Under these circumstances complainant contends that the law of New York State is clear that a married woman, resident of the State of New York, would have been liable under the statute there in force, which, by stipulation between the parties, the court was to be permitted to examine. This I have done. The statute is as follows:

"A married woman may contract with her husband, or any other person, to the same extent, with the like effect and in the same form as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate, or otherwise, and in no case shall a charge upon her separate estate be necessary."

The only question, then, is whether this court ought to enforce the contract against the defendant.

On this crucial question the complainant relies upon the case of *Thompson* v. *Taylor,* in the court of errors and appeals, *66 N. J. Law (37 Vr.) 253.*

That was an action at law, brought against a married woman, founded on a promissory note made by her, a resident of New

Jersey, to her husband, and by him endorsed and negotiated in the State of New York, and, after full consideration of the question in all its bearings, the court held the married woman liable.

I need not refer to the reasoning of the court. The result binds me, and in principle goes further than is necessary in order to bind the defendant in this cause.

There the defendant's liability rested solely upon the mercantile law, viz., the negotiable character of the instrument. There was nothing to show that she had previously received, or ever would receive, any benefit from the transaction.

In the present case the element of suretyship is modified, if not overcome and eliminated, by the fact that the defendant will receive for her money an equivalent, viz., a bond and mortgage, which her husband swears is perfectly good and the property covered by the mortgage ample to satisfy it.

This meets the only other point made by the defendant, viz., that this is a hard bargain, and one which the court, in the exercise of its discretion, ought not to enforce.

It is undoubtedly true that the granting of specific performance is a matter of discretion, but it must be observed that it is a judicial discretion, the character of which I attempted to explain and describe in the case of *Hennessy* v. *Carmony, 50 N. J. Eq. (5 Dick.) 616* (at *p. 625*), in which I ventured to say that by judicial discretion was meant "that the judge must be discreet, and must act with discretion and discriminate and take into consideration and give weight to each circumstance in the case in accordance with its actual value in a court of equity."

This judicial discretion is clearly distinguished from the personal discretion of the individual.

Applying that test here and taking into consideration all matters that should have weight in determining the question, I think the balance of equity is decidedly in favor of the complainant, and that there is no such hardship to result from enforcing the complainant's clear right as should induce this court to stay its hand.

In arriving at this conclusion I have not overlooked an ele-

ment mentioned, but not seriously pressed, in the able and comprehensive argument of defendant's counsel, viz., the delay for nearly four years in the filing of this bill.

The right to the payment of the $5,000 matured on November 18th, 1889, and this bill was filed in July, 1903.

The distinguishing features of this case are these—*first,* that the vendor's right to the payment of the purchase-price became vested on the day of the maturity of the contract, and the defendant has ever since been in default; *second,* that the subject-matter of the contract remains unchanged in character and quality, and, so far as appears, in value.

Hence the defendant has lost nothing by the delay. But if she had, I am unwilling to admit that it would avail her as a defence here, since it seems to me the duty was cast upon her to look after the security after her liability became fixed in law and equity to pay the purchase-price.

It will be seen at once that this case lacks those elements sometimes present in cases where the action is by vendee against vendor and the value of the subject-matter is fluctuating, and which have heretofore induced the courts to refuse relief where there has been unreasonable delay.

An examination of the authorities cited in support of the text in *Pom. Spec. Perf.* § *403 et seq.,* shows that Lord Eldon's famous words, "ready, desirous, prompt and eager," do not apply to this case.

The complainant in this case has always been ready and desirous to receive the amount due. Frequent demands have been made upon the mortgagor, whose president is the husband of defendant. The commencement of a suit was not necessary, as it sometimes is, in order to perfect complainant's rights.

I will therefore advise a decree that the defendant repay to the complainant the amount due on the mortgage, with costs, and that the complainant have execution therefor, according to the practice of the court, and that upon payment of the amount so decreed the complainant shall assign the mortgage in question, also the chattel mortgage, to the defendant.

If the defendant shall so desire, I will listen to a motion to

stay the execution while proceedings may be had to enforce all the mortgages, both the real estate and chattel, in the ordinary way in the courts of New York, and credit the amount received therefrom upon the decree.

The precise terms of the decree may be settled by me upon notice. If the parties cannot agree upon the amount due, there must, of course, be a reference.