MUTUAL OIL CO. v. HILLS.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1918.)

No. 3010.

1. SPECIFIC PERFORMANCE ☞70—COMPELLING TRANSFER OF STOCK—INADEQUATE REMEDY AT LAW.

Though, ordinarily, complete and satisfactory remedy for failure to deliver certificates of stock sold may be had in damages at law, there are exceptions, where equity will give relief, as where the value of the stock in question is not readily ascertainable, or where it cannot be had in the market, except at great inconvenience and expense.

2. SPECIFIC PERFORMANCE ☞121(3)—TRANSFER OF CORPORATE STOCK—SUFFICIENCY OF EVIDENCE.

In suit for specific performance of a contract to transfer corporate stock, evidence that the value of the stock in question was not readily ascertainable, and that it could not be had in the market, except at inconvenience and expense, held to bring the case within the rule giving the court jurisdiction in equity to compel a transfer.

3. SPECIFIC PERFORMANCE ☞32(3)—AGREEMENT AS TO EMPLOYMENT OF MANAGER—BILATERAL CHARACTER.

Where one oil company, acting through its president, induced the manager of another company to enter its employment under a contract whereby the manager took 30 shares of stock, giving a note to be discharged by dividends, and agreed to work for $120 a month salary and 5 per centum of profits in his district, which contract was performed by the manager until he was discharged, the contract of employment, including the collateral matter of the purchase of stock, was not unilateral, binding only on the oil company, and so not specifically enforceable as to the stock by the manager.

4. CORPORATIONS ☞426(10)—CONTRACT BY PRESIDENT—ACCEPTANCE OF BENEFITS.

A corporation was bound by a contract for the employment of a manager, made on its behalf by its president, who, when he made it, had general control over the corporation, which company later, with knowledge by the incorporators, directors, and secretary, accepted the benefits of the manager's services, acquiesced in the arrangement, and for several years failed to make any objection thereto, though the contract covering the manager's employment was not formally brought before the board of directors for three years.

Appeal from the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Suit by H. G. Hills against the Mutual Oil Company. From a decree for plaintiff, defendant appeals. Affirmed.

This is a suit in specific performance, brought by Hills, plaintiff, against the Mutual Oil Company, defendant, to require the performance of an agreement for the sale of stock in the defendant company, and for accounting. It is alleged by plaintiff that before December 18, 1909, the corporation authorized Greenlees, its president, to make all arrangements necessary to enable defendant to engage in the business of marketing oils and petroleum in Montana, and intrusted to Greenlees the entire supervision, management, and control of the business; that in December, 1909, defendant, through Greenlees, negotiated with plaintiff for the purpose of inducing him to end his relations with the Continental Oil Company at Great Falls, Mont., and to take charge of the business of the Mutual Oil Company in the Great Falls section; that Greenlees represented to Hills that the district managers of the new

company must be stockholders in defendant; that as the result of the negotiations an agreement, a partial memorandum of which was in writing, was made. The writing was dated at Great Falls, December 18, 1909, and is as follows:

"Gt. Falls, Mont., 12—18, 1909.

"Whereas, I have this day executed a note to the Mutual Oil Co., of Lawrence, Kansas, for $3,000.00, same being given for 30 shares, of $100.00 each, of the common stock of the Mutual Oil Co.: It is hereby agreed that the dividends accruing on this stock, together with my share of the net earnings of the Great Falls district, same being 5 per cent., as set out in one certain contract, shall be applied on said note until same is fully paid. The above shares of stock to be then delivered to me together with the canceled note by the Mutual Oil Co. Should this note not be fully paid in this manner when due, it is agreed that a new note for the balance then due shall be executed to be held in the same manner until fully paid. The old note to be canceled and returned. H. G. Hills.

"Mutual Oil Co.,
"By J. R. Greenlees, Pt."

It is further alleged that under the terms of the agreement Hills was to be employed as manager of the business of the Oil Company in the Great Falls district for such period as Hills should be in good health and able to give his attention to the management of the business; that the Oil Company would pay to Hills $120 per month and 5 per cent. of the net earnings of the business done by the defendant in the Great Falls district; that plaintiff would buy from the defendant 30 shares of the capital stock at $100 per share; that Hills made and delivered his promissory note for $3,000, payable on or about July 1, 1911, for the 30 shares of stock, the certificates for which were to be issued and delivered to Hills whenever the note was paid; that all dividends upon the 30 shares and the 5 per cent. of net earnings were to be applied on the note until it was paid, and if not paid at maturity renewal note for balance due was to be made, to be paid off under like arrangements. It is alleged that Hills began his work as manager about January 19, 1910, and remained until about March 1, 1913, when, without reason, he was discharged. Plaintiff alleges that the 5 per cent. of the net earnings in the district would be at least $3,000 per annum, and that the dividends earned on the stock had been at least 100 per cent., and that the market value of the shares when suit was brought was at least $200 per share; that about July 11, 1911, the defendant required him to make a renewal of the first note, and that he made such renewal; that dividends earned upon the 30 shares of stock exceeded the $3,000 owing by him to the defendant on the promissory note, and that the note ought to have been canceled; that the business and value of shares will greatly increase; that the stock is not for sale in the market; that the shares have a special and peculiar value, and that the defendant can deliver 30 shares.

The defendant denied that Greenlees was authorized to make the writing of December 18, 1909, or arrangements to enable it to engage in business in Montana, as alleged, and set up that about December 18, 1909, Greenlees met Hills in Great Falls and employed him as the manager of the business of the defendant company for the Great Falls district at a salary of $120 per month, but that in doing so Greenlees acted on his own responsibility, and that the salary consideration was the only thing offered by Greenlees to Hills as an inducement for him to terminate his relations with the Continental Oil Company; that, if Greenlees made any representations to the effect that the managers must become stockholders, they were untrue and unauthorized; that Hills remained in the employ of the company until February, 1913, when he was discharged as its resident agent and manager for the Great Falls district, and was thereafter employed by the company as a clerk at $100 a month until this action was commenced. The averments with respect to the contract are denied, as is ratification of any act of Greenlees in assuming to enter into any such contract, and it is alleged that, when Greenlees made the writing, plaintiff was fully informed that before it would have any effect it would

have to be ratified by the board of directors. It is alleged that the writing was to be regarded as temporary and informal, and a proposed arrangement. but that the formal contract was never executed or ratified, all of which the plaintiff knew; that plaintiff was discharged for incompetency about March, 1913; that if plaintiff ever made the $3,000 note, as alleged, defendant did not know of it, and never ratified in any manner any action with respect to the note; that the contract set out in the plaintiff's complaint is illegal and void at law; that plaintiff did not render satisfactory services, disregarded instructions made to him, and caused the loss of considerable money.

The District Court heard the evidence and found that on December 18, 1909, a contract between plaintiff and defendant was made, whereby plaintiff was to become local manager for the defendant, to establish and conduct local stations at Great Falls and elsewhere in Montana for sale and distribution of oil, so long as plaintiff was in good health and attended to business; that plaintiff was to be paid $120 per month and 5 per cent. of the net earnings of the managed territory; that plaintiff agreed to buy of defendant 30 shares of its common stock, and gave therefor his note for $3,000, to be paid by application of dividends accruing and the 5 per cent.; that the defendant company had no directors until June, 1910, but that prior to that time Greenlees was the practical head of the company, assumed to be president, made his office the office of the company, alone transacted all business in establishing and carrying on the business, alone was actively engaged therein, sustained it with his money and credit, borrowed money on its credit, supported by his personal indorsement of its notes, executed and pledged by him as collateral, made all defendant's contracts, submitted them to no one, "and in all things did all the corporation could do"; that his co-incorporators knew and acquiesced in all that he did; that the parties intended the contract to take immediate effect; that the note of the plaintiff was delivered December 18, 1909, to Greenlees, for the corporation; that Hills actively entered the service of the company about January 19, 1909, and remained therein some three years, without any action by the directors; that reduction of the agreement to writing was not a condition precedent, but that, if it was, it was waived and performance of the contract entered upon. The court found that the directors took no adverse action, notwithstanding the fact that the incorporators and directors of the defendant company knew that Greenlees had "made some arrangement" with Hills, and that Greenlees, for the defendant, pledged Hills' note prior to the creation of the board of directors, and renewed and repledged the note; that in March, 1910, Hills' application for a fidelity bond passed through the company office and was signed by the secretary, and, notwithstanding the fact that the attorney's draft sent to Greenlees became known to the secretary and directors of the company, and that Hills had remained in the service of the company, "no one of them," finds the court, "even suggested to plaintiff, prior to the summer of 1912, that defendant denied the contract and would not perform it."

Fletcher Maddox and I. W. Church, both of Great Falls, Mont., and S. D. Bishop, of Lawrence, Kan., for appellant.

James W. Freeman and John N. Thelen, both of Great Falls, Mont., Edwin L. Norris, of Dillon, Mont., and George E. Hurd, of Great Falls, Mont., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1] It is urged by defendant that it was error for the court to decree that the defendant corporation should cause to be issued and delivered to plaintiff certificates for 30 shares of its stock. The assignment of error is predicated upon certain evidence that Hills had bought stock for himself in the corporation in open market within two years of the date

of the trial of the case, and that under such circumstances equity would not interfere, but would leave the plaintiff to his remedy at law. While ordinarily, complete and satisfactory remedy for failure to deliver certificates of stock may be had in damages at law, there are exceptions. For example, where the value of stock in question is not readily to be ascertained, as in Newton v. Wooley (C. C.) 105 Fed. 541, or where the stock cannot be had in the market, except at great inconvenience and expense, as in Equitable G. Co. v. Baltimore Coal Tar & Mfg. Co., 63 Md. 285, equity will give relief. Story Equity Jurisprudence, 717(a), 718. The Supreme Court, in Hyer v. Richmond Traction Co., 168 U. S. 471, 18 Sup. Ct. 114, 42 L. Ed. 547, in considering a contract specifically for the transfer of corporate stock, said:

"If stock has a recognized market value, courts will ordinarily leave the parties to their action at law for damages for breach of the agreement to sell; but in cases where the stock has no recognized market value, is not purchasable in the market, or has a value which is not settled, but is contingent upon the future workings of the corporation, equity will sometimes decree specific performance of a contract of purchase."

See Express Co. v. Railroad Co., 99 U. S. 191, 25 L. Ed. 319; Leach v. Forbes, 11 Gray (Mass.) 506, 71 Am. Dec. 732; Cushman v. Thayer Mfg Co., 76 N. Y. 365, 32 Am. Rep. 315; Johnson v. Brooks, 93 N. Y. 338; Schmidt v. Pritchard, 135 Iowa, 240, 112 N. W. 801.

[2] Plaintiff's evidence was to the effect that the value of shares of stock had risen to not less than $200 per share; that the business of the company has increased, and will increase; that large dividends will be earned, the exact amount of which could not be estimated by plaintiff; that there is but a limited amount of stock issued; that it is not for sale upon the market, and cannot be readily bought; that it was impossible to determine the actual damage which plaintiff would sustain if the stock should not be delivered to him; and it is not denied that defendant has sufficient stock to enable it to live up to the agreement and deliver 30 shares. There was some testimony by the secretary of the defendant company to the effect that at the time of the trial Mr. Greenlees and another person were offering stock for $160 per share; but it was indefinite, not only as to the amount of stock so offered, but whether there was any general market for the stock. In Bernier v. Griscom-Spencer Co. (C. C.) 161 Fed. 438, cited by the appellant, plaintiff did not allege that the common stock could not be bought in the market, or that it had any peculiar or special value to the plaintiff, or that the defendant retained any of its stock. The court, however, expressly recognized that equity would sustain an action for specific performance under conditions not generally unlike those presented in the present case. In our opinion the court was well within the rules which gave it jurisdiction in equity.

[3] It is contended that the contract was implied, and not expressed, and that equity should not decree specific performance, unless there was mutuality, certainty, and definiteness. But there was nothing unilateral in the agreement, for the evidence clearly shows that after the parties had been to the office of an attorney in Great Falls, with the purpose of putting their whole contract in writing, Hills gave up his position with his former company and directed all his energies to

the advancement of the interests of his new employer, the defendant company. The note for the shares of stock was given and accepted, the defendant company paid him $120 per month, the agreed compensation, and Hills went ahead to extend the business of the company, and for a long time carried it on, apparently to the satisfaction of the president of the company and to the advantage of the corporation. The contract is enforceable for benefits corresponding with the time of performance by plaintiff. Law v. Smith, 68 N. J. Eq. 81, 59 Atl. 327.

[4] It is said that the contract was not expressly authorized, and was not within the implied powers of the president of the defendant company, and that there never was a subsequent ratification of the agreement. But it is plain that Greenlees, when he made the contract, had general control over the management of the business of the defendant company, and it is found that the corporation, with knowledge on the part of the incorporators and directors and secretary, accepted the benefits of the services of the plaintiff, acquiesced in the arrangement, and for several years failed to make any objection thereto. Under such circumstances it does not help the defendant that the contract was not formally brought before the board of directors until 1912, for the corporation will be bound by the contract. Paul Steam System Co. v. Paul (C. C.) 129 Fed. 757; Cook on Corporations, § 727; Marshall on Private Corporations, § 363.

Other errors assigned are of less importance, and we find none well founded. We think plaintiff was entitled to maintain the suit, and to have the stock transferred, and to the relief granted by the lower court to the extent stipulated upon between the parties in case of affirmance.

Affirmed.